Beavers and Jemison v. Smith.

## BEAVERS AND JEMISON v. SMITH.

1. This court will not permit error to be confessed, upon a power of attorney alledged to be executed by the defendant in error for that purpose, she being a non-resident, and her attorney in this court making affidavit that he believed it was fraudulently obtained; but will leave the parties to seek their redress in the ordinary mode.

2. A citizen does not lose his political rights by residence in a foreign country, nor does the continued residence of a woman in a foreign state, after the death of her husband, authorize the inference that she has become entitled to its political privileges. Whether a citizen of the United States can throw off his allegiance without the consent of his government—*Quere.*

3. The widow is not dowable of a mill, which a purchaser from the husband had erected, the one existing at the time of the sale having been dilapidated, and torn down by the purchaser. Such a case is a proper one for compensation, and a court of chancery can alone afford relief.

4. Where an assignment cannot be made of a portion of the premises, the interest of one-third part of the value of the premises at the time of the alienation, is a just criterion. Where the principal value consists in buildings, requiring an annual outlay to keep them in repair—*Quere*—Is it not just the dowress should contribute her portion of the expense?

5. At law, the widow cannot recover damages, as mesne profits, against a

Beavers and Jemison v. Smith.

purchaser but from the institution of the suit, though the rule is otherwise as against the heir. But in equity, damages are allowed the widow upon the ground of title, and she is entitled to interest upon the arrears.

6. Where a compensation is made in money, the decree should not be for a gross sum, by estimating the supposed present value of the widow's life estate, but for the payment annually of the sum ascertained to be the annual value of the dower interest during the life of the dowress, secured by a *lien* upon the estate, or in some other eligible mode.

7. *Quere*—Where the widow receives a portion as one of the distributees of the estate, may not the court decree compensation, where she is proceeding against a purchaser from the husband with warranty?

8. Where no obstacle is thrown in the widow's way in the recovery of dower, she is not entitled to costs.

Error to the Chancery Court of Talladega.

THE bill was filed by the defendant in error, widow of Benjamin Smith, to obtain dower in certain lands situate in Talladega. The bill alledges the marriage of herself and husband in South Carolina. The removal to this State by her husband, bringing her and the children of the marriage, with him. The settlement in Talladega, and purchase by the husband of certain lands which are described, upon which it is alledged valuable improvements were made, including a water mill, &c. That on the 6th March, 1834, the said Benjamin sold the said land to Major Beavers for $4500, and executed to him a deed therefor. That in 1834, her husband conveyed a parcel of the tract to one Edward Prince, who afterwards sold, and conveyed the same to Robert Jemison. That in 1836, Beavers sold and conveyed to Jemison a portion of the lands for $5000. That her husband has departed this life about six years before the filing of the bill, without making any provision for her by will, having died intestate. That she never relinquished her dower in the lands sold by her husband. The prayer of the bill is for an admeasurement of dower, for general relief, &c.

The defendants Beavers and Jemison, answered the bill, denying all knowledge of the marriage of the complainant with Benjamin Smith, and requiring proof of the fact. They admit that he brought with him to Talladega the complainant, or a woman of her name, with whom he lived. That he removed to Texas in the year 1834, carrying her and the

rest of his family with him, and that he died there in 1836, the complainant still residing there. They admit the purchase of the land describe in the bill, but insist that to certain portions thereof Benjamin Smith had no title, either at law or in equity, and set out, and describe an eighty acre, and a forty acre tract, as being in this condition; the last tract being the one described in the bill as having been conveyed to Edward Prince.

They admit the sale from Beavers to Jemison, and also admit that when the land was purchased by Beavers from complainant's husband, there was upon it a grist and saw mill, but not of much value. That they were almost in a state of dilapidation when Beavers sold the land to Jemison; and that he shortly after pulled them down, and erected valuable improvements, costing him near $20,000. The dwelling house was scarcely habitable, and in their opinion would not have rented for more than $100. It is admitted that Jemison rented them one year for $500, but shortly after they became almost entirely valueless. That before Jemison proceeded to make his improvements on the land, he had an assurance from complainant, conveyed through her brother, that she never intended to claim her dower.

They also insist, that as the complainant has continued to reside in the Republic of Texas, since the decease of her husband, she is an alien, and cannot recover her dower. They also rely upon the statute of limitations of six years, as a bar to a recovery. They also demur to the bill.

They also filed a cross bill, which was dismissed by the chancellor, and upon which no question is made in this court.

Much testimony was taken, which is sufficiently noticed so far as it is important, in the opinion of the court.

The chancellor, after disposing of certain objections to the testimony, proceeded to determine, that the complainant was entitled to dower in all the lands, except the eighty, and the forty acre tracts described in the answer of the defendants. That of the residue of the lands, the complainant was not dowable by metes and bounds—that she was dowable of the value of the lands at the time of the alienation, and was not dowable of the improvements put upon the lands since; but that the value of the dower ought to be estimated in money, and assign-

ed to her in that form, and that she was entitled to dower in the net annual rents and profits, only from the time of filing the bill. A reference was made to an auditor, to state an account of rents and profits, and the value in money of the complainant's dower interest during the remainder of her life. The auditor reported the dower interest, at the date of his report, to be $750 40.

To this report both parties excepted, and the chancellor set it aside, and settled the following principles for the goverment of the auditor:

That the demandant was entitled to an account of rents and profits, from the time of filing the bill, up to the date of the decree, and in addition a gross sum equal to the value of her estate.

That the land was to be estimated at its value at the time of the alienation. That leaving out the Prince tract, which was no part of Beavers' purchase, the tract as sold consisted of two hundred and forty acres, of which she was dowable of one hundred and sixty acres, or two thirds of the whole, which was worth $4,500, that consequently $3,000 was the sum out of which dower was to be carved.

He also considered that the interest of one third the value of the land, at the time of the alienation, was a proper allotment in lieu of the land itself, during the life of the demandant, and that she being forty-five years of age, of good constitution, healthy and robust, might be presumed to live seven years.

From these principles the auditor stated the following report:

Sum of which the complainant is dowable, $3,000.
Legal interest on one third of that sum, for seven
years, is..................................$560 00
Legal interest from the time filing the bill, 2 years,
3 mo's, 20 days, ...................... 103 28

$663 28

Which was confirmed by the chancellor.

The assignments of error are—1. The overruling the objections to the testimony of defendant in error.

2. In the interlocutary decree made.

3. In overruling the exceptions to the report of the auditor.

4. In the final decree rendered.

At the trial term of the cause, in this court, the plaintiffs in error produced a paper purporting to be a power from Catherine Smith, to confess error, and a confession of errors by the attorney in fact, but it being suggested to the court, that the power had been fraudulently obtained, a rule was made, requiring the defendant, Catharine Smith, to show cause at the next term of the court, why judgment should not be rendered in favor of plaintiffs by confession of errors.

At the succeeding term of the court, the due execution of the power of attorney was proved by affidavit.

Upon the other hand, it was shown by the affidavits of sundry persons, that a large portion of the decree had been transferred by David Conner, the attorney in fact of the defendant, before the execution of the power.

The counsel for the defendant made affidavit, that from information and belief, he stated that any release, or discharge of said decree, or revocation of said power of attorney, obtained from the defendants, by the plaintiffs or their agent, was obtained without consideration, and by fraudulent misrepresentations, or fraudulent concealment of facts, and without any notice to the parties, to the payment of whose debts the said decree had been dedicated, by the duly authorized agent of the defendant. It further appeared that the defendant was a resident of Texas.

The court directed the preliminary motion, and the merits, to be argued at the same time.

CHILTON, for the plaintiff in error. 1. The demandant when she exhibited her bill was an alien, and therefore not dowable. [Shanks v. Dupont, 3 Peters' Rep. 248; Kelly v. Harrison, 2 Johns. Cas. 29; Congregational Church at Mobile v. Morris, 8 Ala. Rep. 182; Coke on Lit. 31.] Expatriation may be considered a practical and fundamental doctrine of America;—American history, American institutions, and American legislation all recognise it. [Alsberry v. Hawkins, 9 Dana, 178; Moore v. Tisdale, 5 B. Mon. 352.] It is the law of nature, and of nature's God, pointing to the wide world, where to choose our place of rest, and Providence our

guide. Her removal to Texas with her husband in 1834, and permanent residence in that country ever since, and her declared intention to remain, authorizes the presumption that she has become an alien *de jure*, as well as *de facto*. [2 Hein. B. 2, C. 10, p. 220; ib. 181.]

2. But if dowable, as the proof shows she is administrator of her husband's estate, who has conveyed the lands with full covenants of warranty to defendants, she is liable to re- fund what she may recover. The court should set off one demand against the other under the peculiar circumstances of the case. [2 Story's Eq. 664.] Or hold her recovery as a fund for their indemnity. [Pharr & Beck v. Reynolds, 3 Ala. Rep. 521.]

3. The statute gives no authority for alloting a monied compensation instead of dower. [Clay's Dig. 172, § 3.] And the cases where it has been done are either founded on sta- tutes, or upon the consent of the parties. [Hale v. James, 6 Johns. C. Rep. 262; see Langdon v. Stephens, 6 Ala. R. 730, as to equitable dower.]

4. But if such compensation were allowed, the court erred in assuming seven years as the demandant's life, and giving her interest for that period, on one third of the value of the premises at the time of alienation by her husband. [Herbert et al. v. Wren, et al. 7 Cran. 380.

Notwithstanding the conflict of the authorities on this sub- ject, the sensible rule seems to be, that she is dowable in the lands *according to their value at the time of allotment, ex- cluding the improvements made by the defendants.*

Seee an able review of all the authorities, by Story, in Powell and wife v. Monson & Brimfield Manufacturing Co. 3 Mason's C. C. Rep. 347, and authorities there cited.

5. Damages should not have been given.

6. Nor the cost imposed on the defendants below.

S. F. Rice and T. D. Clarke, for defendant in error, made the following points:

1. The assignment of errors by the plaintiffs in error, is a waiver of their right to insist on the rule for a confession of errors.

4

Beavers and Jemison v. Smith.

2. the instruments of writing relied on as sustaining their motion for a confession of errors, cannot be noticed by this court, because their execution is not duly proved—their fairness is impeached—they are no part of the record. [Britt v. Burk, 7 Ala. R. 588.]

3. The said instruments cannot authorize a reversal of the decree, because they are fraudulent—they are made to parties who had no notice, and *since* a sale of a large portion of the decree, by the duly authorized attorney of Mrs. Smith, to innocent and *bona fide* purchasers—they are also in fraud of the lien of the solicitors of Mrs. Smith, upon the decree, for their fees. [Greenleaf's Ev. 203, § 172; Haden, et al. v. Walker, 5 Ala. R. 86; Braham &. Atwood v. Ragland, 3 S. 247; Tipton v. Nance, 4 Ala. R. 194, (Attorney's Lien.) See Bradt v. Coon, 4 Cowen, 416; Pindar v. Morris, 3 Cai. R. 165; The People v. New York C. P. 13 Wend. 649; Hutchinson v. Buchanan, et al. 15 Vt. R. 544.]

4. A woman who was born and raised in South Carolina, and there married to a citizen of the United States, and then settled with her husband in Alabama, and resided there for several years, and until 1834, and then with her husband removed to, and resided in Texas, until the death of her husband, in July, 1836, and since his death has continued to reside in Texas, *is not an alien.* [Lynch v. Clarke, et al. 1 Sandford's Ch. R. 583, 657; Shanks, et al. v. Dupont, et al. 3 Peters' R. 242; Story's Confl. of Laws; 48, (*revival* of native domicil;) ib. 22, 23, (Double allegiance—*natural and local;*) 2 Kent's Com. 50, 64, (citizen—alien—naturalization.)

5. A woman, born, and raised, and married, in the United States, to a citizen thereof, and taken by her husband from her home in Alabama to Texas, in 1834, and there remaining with her husband until his death, and after his death, is entitled to dower in the lands of her husband in Alabama—and may recover such dower, whether she be called alien or citizen. [Allen v. Allen's adm'r. 4 Ala. R. 556; Jinkins v. Noel, 3 Stew. 60; Silliman v. Cummins, 13 Ohio R. 116; Jackson v. Lunn, 3 Johns. C. 109; Scanlan v. Turner, 1 Bailey's R. 421; Story's Confl. of Laws, 128, 129; ib. 453,

454; 4 Kent's Com. 36; Priest, et al. v. Cummings, 16 Wend. 617.]

6. Where land is aliened by the husband, the widow's dower is to be taken according to the value of the land, at the time of the alienation; and "this rule is the most favorable to the purchaser." [Hale v. James, 6 Johns. Ch. Rep. 258.]

7. In all cases like this, where dower cannot be assigned by "metes and bounds," (because the chief value of the land is owing to a mill and mill seat thereon, and the mill and mill seat are not divisible,) the circuit and county courts cannot exercise the jurisdiction conferred on them by our statute. [Clay's Dig. 173, § 5.] And as the chancery court cannot assign the dower by metes and bounds, a pecuniary compensation must be allowed in lieu of dower. And this too, is most favorable to the purchaser. [Wright v. Jennings, 1 Bailey's R. 277; Stoughton v. Leigh, 1 Taunt. 402; Billings v. Taylor, 10 Pick. R. 460.]

"Where a literal execution becomes inexpedient or impracticable, the court will execute it as nearly as it can according to the original purpose, or *cy pres*." This said of charities, but it applies to other things, and to dower. [2 Story's Eq. 415, § 1169, *et seq.*]

8. *Mere residence* in Texas could not destroy the duty of natural allegiance as to the husband. A *renunciation* of his native allegiance, and the oath of allegiance to the foreign country, are essential to make him a citizen of the foreign country. The *native* allegiance remains, even if that oath is taken. If not taken, the case is much stronger. These views apply with greater force to the wife.

If the right of *expatriation* is conceded, then it is clear, that *expatriation* does not, *ipso facto*, work a *confiscation* of the vested civil rights of a wife to dower. *Expatriation* is not *confiscation*—nor does it annihilate vested civil rights, the rights to property in the native country.

9. Mere *non-residence* is not *expatriation*.

10. The character of citizen is not lost in the native country, until the naturalization laws of the foreign country are invoked or complied with. And there is no proof that Smith or his wife ever did take any steps to become citizens of

Texas, except that they resided there. And this is not suf-ficient.

11. The naturalization of the husband does not, *per se*, naturalize the wife. [Priest, et al. v. Cummings, 16 Wend. 617; Shanks v. Dupont, 3 Peters, 242, last head note.]

12. The statute of limitations does not apply to dower. [Jones v. Powell, 6 Johns. Ch. R. 194.]

13. A married woman can only be divested, during cover-ture, of her interest in her husband's lands, in the manner pointed out by statute. [Silliman v. Cumming, 13 Ohio R. 116.]

14. Claims to dower are paramount to those of creditors. [Thayer v. Thayer, 14 Vt. R. 117; Allen v. Allen, 4 Ala. R. 556.]

ORMOND, J.—Although this court has appellate jurisdic-tion only, it may nevertheless restrain the action of its suit-ors, upon facts ascertained, and made known to it, from the general power vested in all courts, of preventing the abuse of its process, and of the means provided for the administration of justice. The cases of Hall v. Hrabrowski, 9 Ala. 278, and Bradford v. Bush, at the last term, are instances of the exercise of this power.

But this court can only act in such cases where the fact is admitted, or where its truth is inferrible from its not being denied. Having no original jurisdiction, it cannot ascertain the existence of a disputed fact *in pais*.

Here, the plaintiff in error having made a *prima facie* case, by the production of a power of attorney from the defendant in error, to confess error, and the confession of error founded on the power, a rule was granted upon the defendant in error, to show cause why error should not be confessed. The de-fendant being a non-resident, her attorney in this court con-troverts the *bona fides* of the act, and makes affidavit, that he believes the power of attorney to confess errors, was fraudulently obtained from his client. In addition, it appears that before the power to confess errors was given, the author-ized agent of the defendant in error, had transferred to third persons the principal part of the judgment. Under these circumstances we do not think this a proper case, for the in-

terposition of the extraordinary power of this court, which can only be properly exeecised when the facts upon which its action is based, is either admitted or not denied, and when its action cannot by possibility prejudice the rights of any one. In all doubtful cases, the party-complaining must be left to that relief, which the law has otherwise provided for the redress of all injuries.

The question whether the complainant is debarred from asserting her right to dower in the lands of her deceased husband, in consequence of her removal with him to Texas, in 1834, and remaining there since his death, which took place in 1836, and having thereby, as is insisted, become an *alien* to this country, is one of great interest. As it respects the right of expatriation, insisted on by the plaintiff's counsel, without the consent of the government, it would seem to follow necessarily from our naturalization laws, that our people can migrate and transfer their allegiance at their pleasure, to a foreign government ; as our laws do not require the consent of the former sovereign, to the expatriation of a foreigner, as a condition of his becoming a citizen of the United States. The well known rule of the common law, that a natural born subject cannot divest himself of his allegiance to his sovereign, appears to have been considered as the true rule in the United States, in Ainslie v. Martin, 9 Mass. 461. In the case of the Santisma Trinidad, 7 Wheaton, 283, the question came before the Supreme Court of the United States, and it is put as a *quere*, whether an American citizen can throw off his allegiance to his native country, independent of any legislative act authorizing him to do so. This interesting question must therefore, in this country, be considered as unsettled.

Nor is it necessary it should be settled in this case, for con-conceding the right of expatriation as it is called, to be as contended for, it is very certain that the mere removal of a citizen of the United States, to a foreign country, does not work a forfeiture of his political privileges, as a citizen of the United States. He may, by the removal, owe a local, temporary allegiance to the sovereign of his domicil, but neither in England, or the United States would a sojourn of any length of time, entitle such resident to the political rights of

a natural born subject, or citizen.   In England he could only acquire such a right by act of parliament, and in this country, by doing the acts enjoined by the naturalization laws. Until these are done, he is regarded by the laws of both countries as an alien.

We need not stop to inquire, what would have been the effect on the wife, of the husband's renouncing his allegiance to the United States during the coverture, and becoming a citizen of Texas, because it does not appear that the husband ever became entitled to the political privileges of a citizen of that Republic.   Nor does it appear, that the complainant since his death has become a citizen of that State, and entitled to its political rights; yet this was a fact which the defendants put in issue, and were bound to establish.   We cannot infer that such is the fact, from her continued residence there, since her husband's death, although such an inference seems to have been drawn by the Supreme Court of Kentucky in Alsberry v. Hawkins, 9 Dana, 178.

Her residence there, is entirely consistent with the retention of her political rights derived from her birth in South Carolina, and until some further act is shown, inconsistent with the future assertion of this right, it appears to us illogical, and unwarrantable, to deduce such an inference from an act so equivocal as residence merely.   This inquiry would seem to be of small importance in this cause, as the Republic of Texas has become an integral part of the United States whilst this cause has been in progress, and all its citizens have become citizens of the United States.   If, then, there had been a temporary suspension of the right to sue, has it not been restored by the annexation of that State to the Union?

The question of what the widow shall be endowed, whether of the value of the land at the time of the alienation, or of the enhanced value at the time of the assignment, arising from improvements by the *alienee* in the erection of a mill, &c. was fully considered by us in the case of Barney v. Frowner and wife, at the last term, when it was held, that she was not dowable of such improved value.   It was also held, that the statute remedy for the admeasurement of dower, was confined to those cases where an assignment could be

made by metes and bounds, and where that was impossible, and it was necessary to make a compensation in money, resort must be had to a court of chancery. It is said in the old books, that where a mill is subject to dower, the widow may be endowed of the third toll dish. [Coke Litt. 32;a Thomas Coke, 671.] That was impossible in this case, because the mill, which existed at the time of the alienation by the husband, becoming dilapidated, was torn down by the alienee, and a much more valuable, and more costly structure erected in its stead, which it would be obviously unjust to endow the widow of; it was therefore a proper case for compensation, and a court of equity could alone afford the proper relief.

No question was made in the case as to the appreciation in value of the property, from any other cause than the improvements made by the purchaser, the true rule was therefore adopted by the chancellor—the value at the time of the alienation, and having ascertained that, he decreed her the interest on one-third part of such value from the time of the filing of the bill.

At common law, where an assignment could not be made of the thing itself, the widow was dowable in a special manner. Thus, although she was dowable of the third toll dish of a mill, the sheriff might assign her a third part of the profits—a third part of the profits of a fair, of an office, of a park, of a dove cote, &c. [Coke Lit. 32,a.] So also of mines, where an assignment of the mine was impracticable, of the third part of the profits. [Stoughton v. Leigh, 1 Taunton, 402.]

In this case there is no means of ascertaining what would have been the profits of the old mill, if it had remained, and which would have necessarily fluctuated from the operation of temporary causes, and we cannot conceive of a better criterion than that adopted by the chancellor—the interest of one-third of the value of the premises at the time of the alienation. This is fair and just to both parties, and in any series of years, would be found, we apprehend, to be as often above, as below the actual nett profits. This rule was adopted by Chancellor Kent in Hall v. James, 6 Johns. C. 258. This rule, it is urged by counsel, was agreed on by consent in that case, but that is a mistake. The consent was to receive an

adequate sum of money, instead of an assignment of the portion of the premises, and the chancellor determined as matter of law by what rule it should be ascertained.

In a case where the principal value of the premises consists of buildings, requiring an annual outlay to keep them in repair, and prevent their destruction, it is but just that the dowress should contribute her proportion of the expense, as she must have borne it herself, if an assignment had been made of the thing itself. [See the case last cited.] These remarks are peculiarly apposite when applied to a mill, but no such question appears to have been made in the court below, and was not here.

It is further objected, that damages should not have been given. Damages are properly the mesne profits, arising after the death of the husband, and before the suit for dower. These were not allowed at common law, but were given to the widow by the statute of Merton. In this case the chancellor has properly restricted the widow in the recovery of profits, to the time of the institution of the suit, the defendant being a purchaser. As against the heir, the rule would have been different, and damages would have been recoverable from the death of her husband. But whatever may be the rule at law, in equity the established doctrine is to allow the widow the mesne profits as damages; and this not by analogy to the allowance of damages under the statute of Merton, but on the ground of title. This is decisively settled in the leading case of Curtis v. Curtis, 2 Brown's C. 619.

The chancellor also allowed interest upon the arrears and up to the time of the decree, and this, in our opinion, was strictly correct. The general rule of the English chancery, is not to allow interest upon arrears of annuities, except in peculiar cases, [Anderson v. Dwyer, 1 Sch. & Lef. 303,] and this Mr. Roper states, is the rule of that court upon arrears of dower, though he admits he has found no case going that length, and argues to show that the rule should be otherwise. [1 Rop. on H. and W. 457.] We apprehend, however, that this rule applies in no case to arrears, which have accrued pending the suit, and even in regard to annuities, where they are given for maintenance, the rule is otherwise in England, and interest on the arrears is allowed. [New-

man v. Auling, 3 Atk. 579.] That appears to be the principle of this case, as the widow's dower is intended for her sustenance, and we think interest was properly allowed on the arrears.

The master, in ascertaining the value of the dower interest, instead of estimating one-third of the value of the profits, at the time of the alienation, determined the gross value of the dower at the time of the decree, by assuming the duration of the life of the widow to be seven years. By what data or upon what rule of law, this period was assumed in preference to any other, we are not informed. We are aware that from the bills of mortality in England, and other places, tables have been constructed, by which the average duration of human life, at all ages, has been ascertained. These tables form the bases of assurances upon lives, and furnish the means of ascertaining the present value of annuities; but, conceding that the calculations from these tables apply to this climate, and country, we are not able to perceive, on what principle they can be considered proper to be adopted as rules of law. The dowress may live to a patriarchal age, she may die the next day, and the assumption that she will live seven years, is alike unjust to her and the *alienee*. The dowress has but a life estate, where lands are assigned to her, and when from the necessity of the case, instead of the use of the land, she receives money, it should partake of the same qualities—the annual value of the portion which would have been assigned her, had it been practicable to do so. If the parties agree to a gross sum, as the value of the life interest, the court would of course give effect to it. In the absence of such an agreement, the decree must be for the payment of the arrears with interest, and for the payment annually thereafter during the life of the dowress, of the sum ascertained to be the annual value of her dower interest. This it would be the duty of the court to secure to her, by a *lien* on the property, or in some other eligible mode.

In Hazen v. Thurlow, 4 Johns. C. 605, a reference was made to the master to ascertain the gross value of the dower interest, but it also appears that the money was deposited in court, subject to the claim of dower, and that she elected to

take a gross sum, and as no opposition was made to the reference, it must be understood to have been assented to.

In South Carolina, it appears, that one-sixth part of the fee simple value of the estate, has been settled, as the proper rule in those cases, where a compensation is made in money, except in cases of extreme youth, or old age. [Heyward v. Cuthbert, 1 McCord, 386; Wright v. Jennings, 1 Baily, 277.] But this is not put upon any general rule of law, but appears to depend upon a statute of that State, which gives the power to commissioners, to assess a sum of money in *lieu* of dower, where the land cannot be equally and fairly divided.

We have been able to find no traces in the English books, of any such rule as was adopted by the court here, or indeed of any rule to ascertain the present value in gross, of the dower interest. In Hobey v. Hobey, 1 Vernon, 218, a bill was filed by the dowress for a re-assignment of dower, charging the assignment of the sheriff to be fraudulent, there being a coal mine on the land of which she was not endowed. The court proposed to the parties, that she should take £300 per annum, or that she should work all the coal lands, and take a third penny therefrom of the clear profits; or that a new writ should issue to the sheriff. She elected to take the third penny, and no opposition being made, it was accordingly decreed, which very conclusively shows, that no assignment of dower, except that of common right, can be made but by consent of the parties.

These principles were affirmed in the case of Herbert v. Wren and wife, 7 Cranch, 370, where it was held, that a sum in gross, in *lieu* of dower, could not be decreed but by the consent of the parties; and that there was no legal authority, for estimating the life of the dowress at seven years, but that the interest on one-third part of the purchase money should be set apart for the dowress, during her life.

It is further urged, that as the husband conveyed with covenant of warranty, the dowress is liable to refund what she may recover from the portion she would receive as one of the distributees of the estate. It is perhaps a sufficient answer to this argument, that if it be admitted the court could thus decree compensation, it should have been put in issue by a cross bill. But neither the answer, nor the informal pa-

per called a cross bill, contains any allegation upon this subject; the evidence therefore which was adduced was wholly irrelevant; and if it could be looked to, does not show what her distributive share of the estate is, or whether there is any thing to distribute.

It remains but to consider the question of costs.    The rule appears to be settled, both in England and the United States, that where no impediment is thrown in the way, the dowress is not entitled to costs.    [Hale v. James, 6 John. Ch. 264; Morgan v. Ryder, 1 Ves. & B. 20.]    Here the widow's right has been resisted, she is therefore, on recovering her dower, entitled to costs.    The costs of this court must be taxed against her.

Let the decree be reversed, and the cause remanded for further proceedings.