MICHAEL F. DOYLE, Appellant, v. TOWN OF DIANA and Others, Respondents.

Fourth Department, November 15, 1922.

Towns — taxpayer's action to restrain carrying out vote of special town meeting for purpose of erecting town hall — proper to show how contested voter voted — woman who lived on land for more than fifty years under verbal contract of purchase was owner within Town Law, § 55, and entitled to vote — woman born in Canada of American father, marrying Canadian in Canada but living in United States until death of husband in 1892, and thereafter, is citizen and entitled to vote — person owning real property in town though not assessed to him entitled to vote at special town meeting in 1919, under Town Law, §§ 53 and 54, and Tax Law, §§ 9 and 21.

In a taxpayer's action brought to restrain the selling or negotiating of bonds of a town and the levying of any taxes for the purpose of carrying out the vote of a special town meeting authorizing the erection of a town hall pursuant to section 340 of the Town Law, in which the plaintiff contests the right of an alien to vote, it is proper to receive in evidence the testimony of such person that he voted against the proposition.

A woman was the owner of real property within the meaning of section 55 of the Town Law and so entitled to vote at the special election where it appears that, some fifty years before the election, she made a verbal contract to purchase the real property, paid for it in part, entered into possession thereof and lived thereon with her husband for nearly fifty years and until his death; that the property was assessed to her and she paid taxes thereon, and that neither the original owner with whom the contract was made nor any one else has ever questioned her claim to ownership.

A woman born in Canada, whose father was a citizen of the United States, who was brought to this country when she was a small child and later was married in Canada to a Canadian and thereafter came to the defendant town with her husband and there resided until her husband's death in 1892, and who continued to reside in the defendant town, was a citizen of the United States at the time of the special town meeting in 1919, and was entitled to vote.

Under sections 53 and 54 of the Town Law and sections 9 and 21 of the Tax Law, a man who owned real property in the defendant town assessed on the last preceding assessment roll prior to the special town meeting, was entitled to vote thereat, although the property was not assessed in his name.

APPEAL by the plaintiff, Michael F. Doyle, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Lewis on the 29th day of December, 1920, upon the decision of the court, rendered after a trial at the Jefferson Special Term, dismissing the complaint.

The action was brought under section 51 of the General Municipal Law.

*Porter & Porter* [*Wilbur A. Porter* of counsel], for the appellant.

*Fred L. Smith,* for the respondents.

KRUSE, P. J.:

This is a taxpayer's action brought to restrain the selling or negotiating of bonds of the town and the levying of any taxes for the purpose of carrying out the vote of the special town meeting of the town for the purpose of erecting a town hall, pursuant to the provisions of section 340 of the Town Law, intended also as a public memorial to the soldiers and sailors of the town of Diana.

The only question presented by this appeal is whether the proposition was carried by a legal vote. Upon the face of the return based upon a canvass of the votes the proposition was carried by a majority of two votes. Upon the trial it was found that the proposition was carried by only one vote. The right to vote of Moses Baskey, Amy Heyscue, Eliza Weed, Louis Repenter and Francis Brady is questioned.

1. Moses Baskey was not a citizen of the United States, but he testified that he voted against the proposition. The plaintiff contends that it was error to receive his testimony over his objection and exception, and that in any event the weight of the evidence is against his testimony to that effect. Without detailing the circumstances upon which this last claim is based I think it is enough to say it was a fair fact, and I am also of opinion that it was proper to show how he voted. (*People ex rel. Deister* v. *Wintermute*, 194 N. Y. 99.)

2. As to Amy Heyscue, it is claimed that she was not qualified to vote. Section 55 of the Town Law (as amd. by Laws of 1913, chap. 124)* provides that " A woman who possesses the qualifications to vote for town officers, except the qualification of sex, and who is the owner of property in the town assessed to her upon the last preceding assessment-roll thereof, is entitled to vote upon a proposition to raise money by tax or assessment."

The trial court finds that at the time of the special town meeting she was in possession of certain real property which she claimed to own; that she had been in possession of the same for more than twenty years immediately prior to the date of the town meeting, actually occupying and cultivating the same under claim of ownership, having the same substantially inclosed, and during all that time had paid taxes on such real property; that it was assessed to her upon the last preceding assessment roll of the town of Diana. Plaintiff challenged this finding, contending that it is unsupported by evidence.

While it is true, as plaintiff contends, that she never had any deed or writing of any kind of this property, her testimony is such

* Since repealed by Laws of 1920, chap. 59, also amdg. Town Law, §§ 53, 54, to conform to Const. art. 2, § 1, as amd. in 1917 and 1921.— [REP.

as to warrant a finding that she made a verbal contract to purchase the same for twenty-five dollars, eighteen dollars of which was paid down; that she has occupied the same for upwards of fifty years. She and her husband moved onto the property and lived there until his death, which occurred in or about 1905. She continued to live there after his death until about 1917 or 1918, when she went to live with her grandchild, leaving some of her goods in the house upon the premises. The evidence is not very clear as to whether the contract was made by her alone, or by herself and husband, or by her husband alone. I think it may be found that the title was to pass to her or to both of them. Although the balance of the twenty-five dollars may never have been paid she has paid the taxes and claimed to own the property, and neither the original owner, with whom the contract was made, nor any one else, has ever questioned her claim so far as the record discloses. I think it may be properly found that she is " the owner of property in the town " within the meaning of section 55 of the Town Law.

3. The right of Eliza Weed to vote is challenged upon the ground that she was not a citizen. It appears that she was born in Canada. She was never naturalized, but it appears that her father was a citizen of the United States. She was born at her grandmother's, and brought to this State when she was a small child. Later she was married in Canada to a Canadian, a subject of Great Britain. The marriage took place in November and she remained there until the following March, when she and her husband went to live in the town of Diana in this State and resided there until her husband's death in 1892. After his death she continued to reside there, remarried in 1919 and still resides in said town. Her father voted in this State and resided with her during the last eighteen years of his life.

Her father being a citizen of the United States, she was likewise a citizen thereof although born in Canada, and the fact that she married a Canadian did not change her citizenship. (10 U. S. Stat. at Large, 604, chap. 71, § 1, approved Feb. 10, 1855; revised by U. S. R. S. § 1993; *Shanks* v. *Du Pont*, 3 Pet. 242, 246; *Beck* v. *McGillis*, 9 Barb. 35, 49.) Even if her Canadian marriage had occurred after enactment of the Federal Expatriation Act of March 2, 1907 (34 U. S. Stat. at Large, 1228, chap. 2534; Id. 1228, § 3), which provides that any American woman who marries a foreigner shall take the nationality of her husband, she could have resumed her American citizenship at the termination of such marital relation by continuing to reside in the United States. The act so provides. And now a formal renunciation of citizenship by a woman

citizen is required before a court having jurisdiction over naturalization of aliens to effect a change in her citizenship where she marries an alien not ineligible to citizenship. (See 42 U. S. Stat. at Large, ——, chap. ——; Id. ——, § 3; Public — No. 346 — 67th Congress, approved Sept. 22, 1922, entitled " An Act relative to the naturalization and citizenship of married women.")

4. As to the objection that Louis Repenter was not a citizen of the United States it is enough to say that he is named in the bill of particulars as one of the persons who was not a citizen and who voted illegally. Even if the plaintiff is not bound by this statement I think the evidence supports the same and that his vote was properly rejected.

5. Francis Brady offered to vote and was refused. The finding is to the effect that he did not offer to vote, but counsel for the defendants concedes this finding was inadvertently made. The opinion of the trial judge and the evidence shows that he did offer to vote. His vote was refused upon the ground that his name was not upon the assessment roll. It appears that he was the owner of a farm under a devise from his father, but the assessment was to " The James Brady Estate." It appears that at some time the name " James " was crossed with a pencil and " Francis " written above it. It is contended by the plaintiff that the presumption is that it was done by the assessors before the roll was completed. But it appears that the plaintiff conceded on the trial that the property was assessed to the James Brady Estate. I think the finding to that effect was justified. It is contended, however, that Brady was nevertheless entitled to vote.

In 1909 the Consolidated Laws were enacted. In that consolidation was included the Tax Law (Consol. Laws, chap. 60; Laws of 1909, chap. 62) and the Town Law (Consol. Laws, chap. 62; Laws of 1909, chap. 63).

Section 8 of the Tax Law then provided as now, that every person shall be taxed in the tax district where he resides when the assessment is made for all personal property owned by him or under his control as agent, trustee, guardian, executor or administrator. (See Laws of 1914, chap. 277, and Laws of 1916, chap. 323, amdg. said § 8.)

Section 9 of the Tax Law then provided: " When real property is owned by a resident of a tax district in which it is situated, it shall be assessed to him. When real property is owned by a resident outside the tax district where it is situated, and is occupied, and the occupant is a resident of the tax district, it shall be assessed to either the owner or occupant. If the occupant resides out of the tax district or if the land is unoccupied, it shall be assessed as

nonresident, as hereinafter provided by article two. In all cases the assessment shall be deemed as against the real property itself, and the property itself shall be holden and liable to sale for any tax levied upon it." (Laws of 1909, chap. 62, § 9.)

In 1911 the Tax Law was amended (Laws of 1911, chap. 315) by omitting the provision contained in section 9, that the real property of a resident of the tax district should be assessed to him, and required all real property to be assessed in the tax district in which it is situated. It retained the provision that the assessment shall be deemed against the real property.

The amendatory act also amended section 21 by providing that the assessment roll shall be prepared in three parts: Part 1 to contain assessment of real property exclusive of special franchises; part 2, the assessment of personal property; and part 3, the assessment of special franchises.

Part 1 shall contain seven columns. In the first column shall be set down the name of the owner or last known owner or reputed owner of each parcel or portion of real property separately assessed, but that such name shall be regarded as an aid to identify such parcel or portion, and a mistake in the name shall not affect the validity of the assessment against the parcel or portion. In the second column shall be set down the description of the parcel or portion sufficiently accurate to identify the same. It also contemplated making a tax map of the district, numbering the different parcels or portions. In the third column shall be set down the approximate quantity.

In 1912 section 21 of the Tax Law, relating to the preparation of the roll, was further amended by adding that the description of the parcel or portion might be by linear dimensions, as well as by quantity. (Laws of 1912, chap. 266.)

In 1914 section 21, as amended by chapter 315 of the Laws of 1911 and chapter 266 of the Laws of 1912, was repealed, and in lieu thereof a new section 21 was enacted requiring, among other things, the assessors to prepare an assessment roll in the form prescribed or approved by the State Board of Tax Commissioners requiring assessments of real property, other than special franchises, to be carried in a separate part of the roll from the assessments of personal property described as therein provided, and containing the names of all persons and corporations taxable on personal property.

In 1915 (Chap. 218) this section 21 was slightly amended, but unimportant here.

In 1916 (Chap. 323) the Tax Law was amended generally, but I find no changes in the law affecting the question here under

consideration. Section 8 still provided that a person shall be taxed in the district where he resides for personal property, and section 9, as thus amended, continued the provision that the assessment against real property should be against the property itself and that the property should be holden and liable to sale for any tax levied upon it. It did not restore the original provision contained in section 9 of the Tax Law that real property should be assessed to the owner. So that now there seems to be no provision for assessing real property to a person, and in that respect making no distinction between real estate of residents and non-residents of the tax district.

The original Town Law provided that an elector of a town should not be entitled to vote by ballot upon any proposition for raising or appropriating money, or incurring any town liability, and should not be entitled to vote upon a proposition submitted for the purposes of section 340 of the Town Law (which relates to appropriations for town houses) " unless he or his wife is the owner of property in the town assessed upon the last preceding assessment-roll thereof." (Laws of 1909, chap. 63, §§ 53, 54.)

It further provided that a woman who possesses the qualifications to vote for town officers, except the qualification of sex, and who is the owner of property in the town " assessed upon the last preceding assessment-roll thereof " is entitled to vote upon a proposition to raise money by tax or assessment. (Laws of 1909, chap. 63, § 55.)

In 1913 sections 53 and 54 were amended by interpolating after the word " assessed " the phrase " to him or her," so that the final clause of these two sections reads " assessed to him or her upon the last preceding assessment-roll thereof." And section 55 was amended so as to read " assessed to her upon the last preceding assessment-roll thereof." (Laws of 1913, chap. 124.)

It is to be observed that these amendments to the Town Law were made almost two years after the provision requiring real property to be assessed to a resident of the tax district had been stricken out of the Tax Law, although it was not until 1914 that the specific provision requiring the names of owners or reputed owners of real property to be stated in the roll was stricken out of section 21 of the Tax Law.

If the amendment of 1913 to the Town Law, above referred to, is to receive the construction that only those electors are entitled to vote whose names appear upon the assessment roll it would seem to disqualify a majority of the taxpayers, as the names of only such as were assessed for personal property were required to be put upon the roll when the assessments involved herein were made. I think this construction should not prevail. In a broad

sense a taxpayer is assessed upon the roll by placing his property upon the roll.

The special town meeting was held April 29, 1919. The last assessment roll preceding the town meeting was made presumably in 1918. At that time and for several years before there had been no provision in the statute for assessing real property to the owner or for having his name appear upon the roll. I am of the opinion that in view of the condition of the law at that time it should be held that in assessing the real property of a resident elector and placing it upon the tax roll, as the law provides, the property is "assessed to him or her" within the meaning of the Town Law relating to the qualification of voters before referred to. In that view it follows that Brady was entitled to vote. He was the owner of the real property upon the roll and the mere fact that it was assessed under the name "James Brady Estate" did not disqualify him, as I think. If his vote was improperly rejected, as I think it was, the result would be a tie and, therefore, the proposition was not carried. This result leads to a reversal.

The seventeenth finding of fact, so far as it finds that Francis Brady did not offer to vote at the special town meeting, is reversed, and in lieu thereof it should be found that Brady offered his vote, but his vote was refused.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

All concur.

Judgment reversed and new trial granted, with costs to appellant to abide event.