## In the Matter of the Estate of MARY B. RAY, Deceased.

Surrogate's Court, Orange County, March 14, 1934.

*Harold S. Van Schaack*, for the petitioner.

*John F. Halstead*, for Catherine Tygert, respondent.

TAYLOR, S. The petitioner, who, according to his petition, resides at Glen Ewen, Saskatchewan, Canada, filed a petition in this court for limited letters of administration upon the estate of his mother so that he would be in position to institute an action in such representative capacity to set aside a trust erected by the decedent in her lifetime. The petitioner gave a power of attorney to his counsel, who makes and verifies the petition as he claims the right to do under the Rules of Civil Practice, made applicable to Surrogates' Courts so far as such rules can be so applied. (Surr. Ct. Act, § 50; Rules Civ. Prac. rule 99; 1 Jessup Redf. Surr. 164, 165; *Matter of Ries*, 170 App. Div. 951; *Moorehouse* v. *Hutchinson*, 2 Dem. 429.) The respondent calls attention to this fact of

verification, but does not seriously dispute the attorney's right to make it. It is undoubtedly permitted by the statute, but its use in Surrogate's Court should not be encouraged, for also by statute petitions in the absence of answers or other appropriate papers questioning the allegations thereof are taken as true and proof of the facts therein alleged (Surr. Ct. Act, § 76), so that wherever possible the allegations should be made by one having first hand information thereof.

The petition alleges that the petitioner is a citizen of the United States and contains the other necessary allegations. The respondent submits an answer which, in the main, denies, upon information and belief, the allegation of citizenship. That is the question presented. (Surr. Ct. Act, § 94.)

Upon the trial of the issue petitioner's sister was called as a witness and testified, in substance, that the petitioner was born in this State, that both parents always were citizens of this country, and so far as she knew never renounced that citizenship. From this the petitioner argues " once a citizen always a citizen " unless the contrary affirmatively appears.

The petitioner has been a resident in Canada for a number of years.

The statute (U. S. Code, tit. 8, § 1, relating to " Aliens and Citizenship ") provides that " all persons born in the United States and not subject to any foreign power are declared to be citizens of the United States."

It is familiar law that a condition of a continuous nature shown once to exist is presumed to continue. (*O'Gara* v. *Eisenlohr*, 38 N. Y. 296; *Matter of McCarty*, 141 App. Div. 816; *Johnson* v. *Manhattan & Queens, etc., Corp.*, 162 id. 753; *Gaston & Co.* v. *All Russian Zemsky Union*, 221 id. 732; *Matter of Darrow*, 64 Misc. 224; *Bartley* v. *Boston, etc., R. R. Co.*, 198 Mass. 163; *Hoagland* v. *Canfield*, 160 Fed. 146; *Virginia Ry. Co.* v. *Linkous*, 230 id. 88; *Texas & P. Ry. Co.* v. *Lacey*, 185 id. 225; *Lehigh Valley Coal Co.* v. *Washko*, 231 id. 42.)

The petitioner having first offered proof in support of his citizenship, the burden of proof of change thereof is upon the party alleging it. (*Succession of Simmons*, 109 La. 1095; *Moore* v. *Wilson*, 18 Tenn. [10 Yerg.] 406.)

A child born in this State of non-resident parents during his mother's temporary sojourn is *prima facie* a citizen. (*Munro* v. *Merchant*, 28 N. Y. 9.)

In *Mitchell* v. *United States* (21 Wall. 350, 353) it was said, " a domicile once acquired is presumed to continue until it is shown to have been changed. Where a change of domicile is alleged

the burden of proving it rests upon the person making the allegation. To constitute the new domicile two things are indispensable: *First*, residence in the new locality; and, *second*, the intention to remain there. The change cannot be made except *facto et animo*. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the *animus* to change the prior domicile for another. Until the new one is acquired, the old one remains."

The holding in *Burleigh* v. *Hecht* (22 S. D. 301) was that the residence of a grantee in a tax deed raises the presumption that such grantee continues to remain such resident until he conveyed the property.

Residence in Canada was the fact presented in *Gilman* v. *Thompson* (11 Vt. 643), but the court said, "all the evidence was, that the plaintiff had, for many years, resided in Canada. Now, this was as entirely consistent with his being a citizen of this state as otherwise, and, therefore, could not justify the jury in finding him an alien."

Similarly in *Buckley* v. *McDonald* (33 Mont. 483) the residence of the father being found to have been in Boston, Mass., the presumption must be indulged that he was a citizen of the United States.

In *Benny* v. *O'Brien* (58 N. J. L. 36) the question was whether one Benny, or one O'Brien, was entitled to a seat in the board of councilmen of Bayonne. Each party received an equal number of votes, but the vote of Benny for himself was thrown out upon the ground that he was not entitled to vote. Benny was born in Brooklyn and lived in Bayonne a number of years. His parents came from Scotland in 1855 and resided here since. The father declared an intention to become a citizen, but at the time in question had not been naturalized. The court in this case said: "Allan Benny, whose parents were domiciled here at the time of his birth, is subject to the jurisdiction of the United States, and is not subject to any foreign power. The right of our government to his allegiance, on the one hand, and its duty to protect him, on the other hand, cannot be denied if, in any case, birth here is to be of the controlling force under the aforesaid act and amendment, for, in the absence of their provisions, children born here of parents who are citizens are themselves citizens in virtue of their birth. * * *

"The object of the fourteenth amendment, as is well known, was to confer upon the colored race the right of citizenship. It, however, gave to the colored people no right superior to that granted to the white race. The ancestors of all the colored people

then in the United States were of foreign birth, and could not have been naturalized or in any way have become entitled to the right of citizenship. The colored people were no more subject to the jurisdiction of the United States by reason of their birth here than were the white children born in this country of persons who were not citizens.

" The same rule must be applied to both races, and unless the general rule, that when the parents are domiciled here birth establishes the right to citizenship, is accepted, the fourteenth amendment has failed to accomplish its purpose and the colored people are not citizens. The fourteenth amendment, by the language ' all persons born in the United States and subject to the jurisdiction thereof ' was intended to bring all races, without distinction of color, within the rule which prior to that time pertained to the white race.

" In my opinion, therefore, Allan Benny is a citizen of the United States in virtue of his birth here of alien parents who at the time of his birth were domiciled in this country " (pp. 39, 40).

The headnote in *Kilham* v. *Ward* (2 Mass. 236) thus expresses the holding: " A person who left this country after the commencement of the revolutionary war, went to, and resided in the British territories for several years, and returned to the United States before the treaty of peace, is a citizen, and not an alien. The Absentee Act of April 30, 1779, operates no disqualification upon a person who was not prosecuted and convicted under it."

In *Matter of Giovanna* (93 Fed. 659) it appeared that Anzelmo Giovanna and her husband and two children arrived here from Italy February 2, 1899, and were determined to be aliens likely to become public charges and refused permission to land. The parents had come to this country about ten years before, established their home here, but had never become citizens. The two children were born in this country and lived here for six to eight years when their parents took them abroad, leaving the other children here, returning as before mentioned. It was held that children of aliens born in the United States are citizens.

In *United States ex rel. Anderson* v. *Howe* (231 Fed. 546) it appeared that Anderson was a Swede who came to this country in 1891, and resided here continuously until 1906. He left his wife and children in Sweden and never brought them to this country. In 1905 he was naturalized, but returned to Sweden in 1906 and there operated a farm until 1915, during which time he did not register as an American citizen. When he returned here he did not bring any member of his family with him. In proceedings for his return to Sweden Anderson testified that it was his intention

to return here when he left and to bring his family and denied any intention of abandoning his American citizenship. While the decision in this case brought into play the statute which provides that two years' residence abroad of a naturalized citizen is presumptive evidence of his renunciation (U. S. Code, tit. 8, § 17, relating to " Aliens and Citizenship "), and that there was nothing in the evidence to rebut that presumption, nevertheless said, " it has been held with almost complete uniformity that mere residence in a foreign country, even by a naturalized American, has no effect upon such person's citizenship."

The converse of the facts here appeared in *Lehigh Valley Coal Co.* v. *Washko* (231 Fed. 42, 45), wherein it was held that " she was an alien therefore from the time of her birth and we are bound to consider her an alien until the contrary is shown."

While perhaps the question was not directly decided, but rather assumed in *Von Schwerdtner* v. *Piper* (23 F. [2d] 862), it appeared that one Frederick Jonathan Von Schwerdtner, a subject of Germany, residing in 1914 in Maryland, went to Germany that year, entered the German army, and remained in Germany until his death. His last will and testament was admitted to probate in Maryland. The decedent's wife was named in the will as executrix, but she was disqualified on account of alienage and administration was granted to the son, according to the opinion, " who, having been born in this country, is a citizen of the United States."

*State of Vermont ex rel. Phelps* v. *Jackson* (79 Vt. 504), after stating that citizenship is presumed from residence here, continues: " This presumption, however, avails the respondent in this case nothing, for it is immediately met with proof of his foreign birth, from which fact arises a presumption that he is a citizen of the country of his birth, and not of his residence,— which requires him to show that his citizenship is not controlled by that fact. * * * Nor did John Jackson's mere subsequent removal to Canada affect the citizenship so established."

The court then observes generally that " Citizenship is a matter of public concern,— a matter over which the government assumes, in some degree, control. It is in its nature continuous, and once established, it is presumed to continue until the contrary is shown. [Citation.] A change of domicile merely does not, as we have seen, effect a change of allegiance. To overcome the presumption of the continuance of the allegiance once established evidence of an actual removal or a continued residence abroad with a fixed purpose to throw off and terminate the former allegiance must be produced."

In *Quinby* v. *Duncan* (4 Harr. [Del.] 383) it was said, " a man

is to be regarded as a citizen of his native state until it· can be shown that he has changed this relation by leaving *animo manendi,* or by acquiring a citizenship elsewhere. * * * And ·this is to be not merely by a change of habitancy or residence, but by a change of citizenship."

Commenting upon the removal of a citizen to a foreign country, the court, in *Beavers* v. *Smith* (11 Ala. 20), said that " It is very certain that the mere ·removal of a citizen of the United States, to a foreign country, does not work a forfeiture of his political privileges, as a citizen of the United States."

*Doyle* v. *Town of Diana* (203 App. Div. 239, 241) and *Matter of Harris* (206 id. 410) follow the general rule hereinabove mentioned.

*Gorman* v. *42d Street, etc., Ry. Co.* (208 App. Div. 214), holding that a presumption of citizenship in the country in which one resides is to be presumed, has not been overlooked. That case is distinguishable in that here there was proof of citizenship by birth and such citizenship in the absence of contrary proof is presumed to continue.

Limited letters of administration will issue to the petitioner.