## HERRICK vs. MALIN.

An *alteration in a deed* though made *subsequent* to its execution by the grantee himself *does not avoid it*, if under the deed a legal title became vested in the grantee by transmutation of possession, either by livery of seizin or by the operation of the statute of uses.

It is otherwise, however, when an action is brought upon the *deed* for a breach of the covenants therein, or upon a *bond* or other sealed instrument; then upon the plea of *non est factum*, the plaintiff is bound to show it to be the *deed* of the party prosecuted, and if there has been an alteration of the instrument, it must be satisfactorily explained.

So also if an alteration appears on the face of a bill of exchange or promissory note, the plaintiff in an action for its recovery, is bound to give evidence in explanation.

Where the alteration in a deed is *material*, the party seeking to enforce it is bound to give some explanation as to the apparent alteration, even if the deed be of more than 30 years standing, and is offered in evidence without proof, as an ancient deed. So *it seems*, explanation may be required where the deed is proved without producing and examining the subscribing witnesses; and if it be not given, a jury will be warranted in finding in opposition to that part of the deed appearing to be altered, if the apparent alteration be of such a character as to create a strong suspicion that it had been *fraudulently* made.

*It seems*, however, that where there is a mere *interlineation* in a deed, without any thing to excite suspicion that it was not made at the time that the deed was drawn and executed, the reasonable presumption is, that it was made before the deed was executed.

ERROR from the supreme court. This was an action of *ejectment*, brought by Rachel Malin against Israel Herrick for the recovery of a tract of land conveyed to her by one James Hathaway, by deed, bearing date 30th July, 1794.

The premises conveyed being described as follows: "A "certain tract of land in township number seven in the se- "cond range of Massachusetts pre-emption, being in com- "mon and undivided with the *proprietor* of said *land*, and "supposed to contain about four hundred acres; it being all "my right, title, interest and demand to lands in said town, "except one hundred acres, which is conditionally convey- "ed Mariah Hathaway. The remaining part of my right "*in said town* is hereby conveyed to said Rachel; and I "do, by these presents, put said Rachel in my place and "stead, to receive said lands in the division thereof with the "said proprietor, to her own use and to her heirs and as- "signs forever." The deed was read in evidence without objection. At the time of the execution of the deed, Hath- away resided on the premises conveyed; he died about two years thereafter, and his widow continued in possession about four or five years after his death, when she quit. Af- ter which, the premises remained unoccupied until the de- fendant entered in 1824 or 1825. On the part of the de- fendant, a witness was called, who testified that from an in- spection of the deed executed by Hathaway to the plaintiff, it appeared plain to him that a letter had been erased from the end of the word *proprietor*, (as italicized above;) that where the word *land* is now written, (italicized as above,) he could discover that the word *town* had been originally written—he could see the outline of the letters *t*, *o*, and *n*, and what might have been a *w*; that the word *town* ap- peared to have been written with the same ink as the rest of the deed, whereas the word *land* was written with dif- ferent ink, darker and apparently newer. As to the words *in said town*, (italicized as above,) he testified that the word *in* and *said*, and the two first letters of the word *town*, ap- peared to have been written over, with blacker ink than the rest of the deed—the two last letters of that word having probably been worn off, or torn off by accident. The coun- sel for the defendant requested the judge who presided at the trial of the cause, to charge the jury that the alterations in the above deed were *material*, and avoided the deed if made after its execution, even though made by a stranger;

that if the alterations were *immaterial* and were subsequent to the execution of the deed, made by the grantee or by her direction or with her assent, such alterations would avoid the deed and prevent its being legal evidence of title; and that the alterations must be presumed to have been made subsequent to the execution of the deed, until the contrary was made to appear. The judge omitted to charge the jury as requested, and instructed them that if they were satisfied with the evidence in the case, they should find a verdict for the plaintiff. To which charge, and omission to charge as requested, the counsel for the defendant excepted. The jury found a verdict for the plaintiff. There was much other evidence in the case, and various other questions of law agitated, but the case is reported only in reference to the question arising upon the *alterations* of the deed. The defendant applied to the supreme court for a *new trial*, which was denied, and judgment was rendered for the plaintiff. In reference to the question of alteration, Chief Justice SAVAGE, who delivered the opinion of the court, in a case of the *same plaintiff against I. N. Rose*, in which the same question arose, observed : " It is said, however, that the deed has been altered, and, in consequence of such alteration, it cannot be evidence to support the plaintiff's title. The first subject of enquiry in relation to this point is, whether the alteration is in a material part. The only alteration consists in writing the word *land* upon an erasure of the word *town*, and erasing the letter *s* at the end of the word *proprietors*. This alteration occurs in the description of land conveyed ; it originally read, " a certain tract of land in township number seven in the second range of Massachusetts pre-emption, being in common and undivided with the proprietors of said *town*." Now it makes no difference whether the parcel conveyed was in common and undivided with the *proprietors of said town*, or with the proprietor of said *land*. The word *land* can have no other sensible meaning than *township* or *town*, in the connexion in which it is used. If land is held in common, there must be at least two owners ; to say that the grantor holds in common with the proprietor of said land, is saying that he holds in

Herrick v. Malin.

common with himself; and what follows shews that the property conveyed, is all his right, title and interest to lands in said town, to wit, township number seven. If however, the alteration can be supposed to alter the sense and meaning of the deed, then it is incumbent on the party producing it to give satisfactory explanation, 2 *Wendell*, 555, unless the estate is such an one as may have existed without a deed, and has vested by transmutation of possession; in which case the estate continues, although the deed be destroyed, 8 *Cowen*, 71. The grantor in this case died soon after executing the deed. His widow remained a number of years in possession, as was understood, under Rachel Malin, who was the reputed owner of the lot."

The defendant sued out a writ of error removing the record into this court, where the case was argued by

*S. Stevens*, for the plaintiff in error.

*D. B. Prosser & M. T. Reynolds*, for the defendant in error.

After advisement, the following opinion was delivered, in reference to the question of alteration of the deed.

By the CHANCELLOR. The first question to be considered in this case is, whether the supposed alteration in the deed of Hathaway to Malin, even if made by her after its execution, avoided the deed so that she could not recover the estate. In *Jackson* v. *Malin*, 15 *Johns. R.* 293, the supreme court held that an immaterial alteration in a will devising real estate, if made by the devisee, rendered the devise void; but as the verdict of the jury had not found whether the will was or was not altered by the devisee, a new trial was granted. It is evident, from the report of that case, that the learned judge who delivered the opinion of the supreme court was misled by *Pigot's case*, 11 *Coke's R.* 26, which was the only case cited in support of his opinion, and that he did not advert to the distinction between an alteration in a mere bond or covenant, where the remedy of

the party is by an action upon the instrument itself, in which action the plaintiff cannot recover if he has cancelled or altered the obligation so that it is not the same which the defendant executed, and an alteration in a deed or will under which a legal title had become vested in the grantee or devisee by transmutation of possession either by livery of seizin or under the statute of uses. *Pigot's case* was an action of debt upon a bail bond given to the sheriff without the addition of his name of office, and was altered by a stranger by interlining the plaintiff's name of office ; and by referring to *Bulstrode's* report of the same case, 2 *Bulst. R.* 246, it will be seen that all the cases cited by Trattman, the defendant's counsel, were cases of that description, and not cases in which the question arose as to the title to real estate which had passed by the deed. The resolutions of the court must, therefore, be taken in reference to the case which was then under consideration. In that view the resolutions in *Pigot's case* only amount to this : that where the obligee in a bond, or the grantee in a deed, alters the bond or deed in an *immaterial part*, he cannot sue upon the bond, or bring an action upon the covenants in his favor in the deed, as, upon the plea of *non est factum* the instrument produced in evidence will not appear to be the same deed which was executed by the defendant. But even in these cases it appears to be a mere technical rule, and as Ch. J. *Dallas* says, the meaning of the rule was rather to ascertain the identity of the instrument than to guard against fraud, It was accordingly held in the case of *Saunderson* v. *Symons*, 4 *J. B. Moore's R.* 42, that an *immaterial alteration* of a policy of insurance, by the assured, would not prevent his recovering against the underwriter. Such, I apprehend, must be the rule in relation to either a material or immaterial alteration in a deed, where the deed is not offered in evidence for the purpose of recovering thereon as upon a contract, but merely to show that the legal title to property had once passed by such deed when it existed as an unimpeachable instrument before alteration.

As early as 1676, it was said by the court of king's bench in England, that a rent or other grant was not lost by the

destruction of the deed, as was a bond or chose in action. *Woodward* v. *Aston*, 1 *Vent. R.* 297. And Mr. *Preston* says, it seems quite clear that no deed, which has once passed an estate or interest, can be avoided so as to divest that estate or interest by the cancellation of the deed; but bonds, or other executory instruments which are merely obligatory on the person, may have their effect defeated by an intentional cancellation of the deed by the obligee. 3 *Prest. on Abs.* 103. The case of *Doe* v. *Bingham,* in the court of king's bench, 4 *Barn. & Ald.* 672, shows that, where a legal title has passed under a deed, the grantee in such deed may give it in evidence in an ejectment suit, as proof of such title, although he has subsequently altered the deed in an *immaterial* part, without the consent of the grantor. *See also Doe* v. *Hirst*, 3 *Starkie's R.* 60. In all the American cases cited on the argument, with the exception of *Jackson* v. *Malin,* the same principle appears to be maintained, and particularly in those of *Lewis* v. *Payne,* 8 *Cowen,* 71; *Jackson* v. *Jacoby*, 9 *id.* 125; *Jackson* v. *Gould,* 7 *Wendell,* 364; and in *Jackson* v. *Chase*, 2 *Johns. R.* 84, in our own courts. I conclude, therefore, that the *immaterial alteration* in the deed from James Hathaway to Rachel Malin, whether made by her or by a stranger, and whether before or after the execution of the deed, did not divest her title, or prevent the deed from being evidence that the title had passed to her from the grantor.

From the conclusion at which I have arrived on this question, it is not necessary for me to consider whether in the case of an alteration of a written instrument, apparent from the face of the paper itself, the legal presumption is, that it was so altered *subsequent* to its execution, *by the party* in whose possession it was when the alteration was first discovered. It may be proper, however, to say that, in reference to *material alterations,* it seems to be proper to call upon the party claiming the benefit of such apparent alterations as a part of the original instrument at the time it was executed, or who claims that the instrument is still binding on the party whose name is upon it, for *some explanation* as to the apparent alteration. Such is unquestion-

ably the rule in relation to deeds of more than thirty years standing, which are offered in evidence without proof as ancient deeds. *Jackson* v. *Osborn*, 2 *Wendell*, 559. *Bull. N. P.* 255. *Roscoe on Ev.* 89. And perhaps the legal rule that a felony is not to be presumed, ought not to exempt the party producing the deed from giving some further explanation, where the deed is proved without producing and examining the subscribing witness, or where he has no recollection on the subject of the supposed alteration. The jury certainly would be authorized to find in opposition to that part of the deed, if the apparent alteration was of such a character as to create a strong suspicion that it had been fraudulently made, unless some explanation was given. The case of *Knight* v. *Clements*, 2 *Will. Wool. & Hodg. R.* 290, goes further; for the court of queen's bench there decided that where a bill of exchange was written upon a two months' stamp payable in two months, but it appeared upon inspection that the word *three* had been originally written and erased, and *two* written upon the erasure, the holder of the bill must prove that the alteration was made before the bill was negotiated. A similar decision was made by the court of common pleas in the case of *Harmon* v. *Dickinson*, 5 *Bing. R.* 183. In *Bishop* v. *Chamber, Moody & Malk.* 117, Lord Tenterden, though he held that in such cases it lay upon the plaintiff to account for the suspicious form and obvious alteration of the instrument, submitted it to the jury to decide from the inspection of the note, whether it had been altered after its completion; and in the subsequent case of *Taylor* v. *Moseley*, 6 *Carr. & Payne*, 273, where the acceptance of a bill had apparently been altered, it appears to have been considered a proper case to be left to the jury to determine whether the alteration had been made after the acceptance of the bill by the defendant. The case cited from *Keble*, however, shows that where there is a mere interlineation in a deed, without anything to excite a suspicicion that it was not made at the time the deed was drawn and executed, the reasonable presumption is, that it was made before the deed was executed. 1 *Keble*, 22, *pl.* 62. 12 *Vin. Abr.*

58, *S. C.* For these reasons I think the circuit judge did not err in refusing to charge the jury as requested by the defendant's counsel, in relation to the supposed alteration of the deed from Hathaway to the plaintiff. The chancellor then, after disposing of the other questions in the case, comes to the conclusion that the judgment of the supreme court ought to be affirmed.

On the question being put, *Shall this judgment be reversed?* All the members of the court (twenty being present) answered in the negative. Whereupon the judgment of the supreme court was *affirmed*.