Acker *v.* Ledyard.

arrest may be resorted to. The only difference seems to be in the remedy, namely, an arrest, instead of reciprocal distress, the foundation being intended to be the same in both cases, viz. that the property is so that the sheriff can not make replevin.

We can therefore see no reason for requiring from a plaintiff, in such an action, any thing more, in order to justify an arrest, than the fact which is established in this case, that the property in dispute was removed so that it could not be found or taken by the sheriff; and though we may regret the harsh consequences which may follow from the other provisions of the statute, we have no alternative but to affirm the order of the special term; but it must be without costs.

SAME TERM. *Before the same Justices.*

ACKER *vs.* LEDYARD.

Where a sheriff, having in his hands an execution against a person occupying premises as a tenant, previous to a sale receives a notice from the landlord that rent is due to him from the tenant, and requiring the sheriff to levy the amount of the rent and pay the same to the landlord, the payment of the money collected by the sheriff into the court out of which the execution issued, will not be a bar to a suit against him by the landlord for the amount of such rent.

Where the execution creditor, as well as the tenant, admits that a certain amount of rent is due to the landlord, the sheriff can not discharge himself from liability to the landlord, by paying the money into court, in a suit to which such landlord is not a party.

Where a material alteration appears to have been made in a deed, of which no note was made at the time of the execution thereof, it is incumbent upon the party claiming under such deed to show that the alteration was made before the deed was executed.

But the question as to the *time* when the alteration was made is one of fact to be decided by the jury.

A sheriff is not liable for the acts of his deputy, where he acts out of the ordinary line of his duty, by the directions of the plaintiff in the execution.

If a deputy sheriff exceeds, or deviates from his delegated powers, by the direc-

Acker *v.* Ledyard.

tions of the plaintiff in the suit, he ceases to be the agent of the sheriff and becomes the agent of the plaintiff.

But this rule applies only when an action is brought against the sheriff for the misfeasance or malfeasance of his deputy.

An order made by a court upon a summary application, in a suit, is not conclusive upon a person not a party to the suit. And this although he appears by his counsel, and opposes the order.

The principle of *res adjudicata* does not apply, in such a case.

ERROR to the superior court of the city of New-York. Susan Ledyard, the defendant in error, sued Acker, as sheriff of the city and county of New-York, to recover the amount of rent due to her from a tenant, Mrs. McElroy, whose goods it was alledged the defendant had levied upon and sold, notwithstanding the plaintiff had caused an affidavit and notice of the amount of rent due to her to be served upon the sheriff, previous to the sale. The defendant pleaded the general issue. On the trial, before Oakley, justice, in Nov. 1840, the jury found a verdict for the plaintiff for $290,78; and the superior court rendered a judgment for the plaintiff for that sum. The facts proved upon the trial are stated in the opinion of the court.

*N. B. Blunt,* for the plaintiff in error.

*G. R. J. Bowdoin,* for the defendant in error.

*By the Court,* EDWARDS, J. It appears from the error book that in the month of October, 1839, Sarah McElroy occupied the premises known as No. 51 Greenwich-street, as tenant of Mrs. Ledyard, the defendant in error; that during said month of October an execution was issued against Mrs. McElroy in favor of John M. Bixby, which was levied upon her household furniture; that shortly after the execution was issued, the defendant in error caused an affidavit and notice of rent due to the amount of $570, to be served upon the sheriff. It further appears that after service of such notice the defendant in error entered into an agreement with Bixby, in which, after reciting her claim for rent, and that Bixby had made such arrangements that the execution was to be stayed, she consented that the furniture

Acker *v.* Ledyard.

should remain on the premises, subject to no greater sum than
$570. After this, and on the 20th day of April, 1840, the de-
fendant in error caused another affidavit and notice of rent due,
and which had accrued subsequently to the first notice, to be
served upon the sheriff. It further appears that on the 1st day
of June, in the same year, a *capias* in this suit was served upon
the plaintiff in error, and that on the 17th of June an order
was made in the court of common pleas that he have leave to
pay into the hands of the clerk of that court the sum of $508,87,
being the balance, after the payment of fees and expenses,
which had been collected by him under the execution issued by
Bixby against Mrs. McElroy.

The first objection which was taken on the argument was,
that the affidavit and notice which were served upon the sheriff
on the 20th of April, did not comply with the provisions of the
statute. A reference to the error book will show that no such
objection was made in the court below. But, if it had been, it
would have been entirely immaterial; for the judge in his
charge to the jury expressly instructed them that the defendant
in error had not by her notice of the 20th of April, or otherwise,
entitled herself to payment by the sheriff of the rent accruing
and becoming due subsequently to the levy

It was next contended that the fact that the words "in ad-
vance" were written on an erasure destroyed the lease; and
that, for that reason, the plaintiff below should have been non-
suited.

There is no doubt that the words *in advance* constituted a
material provision in the contract, and, as no note of the erasure
was made at the time of the execution of the lease, it became
necessary, under the circumstances, for the plaintiff to show
that such erasure was made before its execution. But the ques-
tion as to the time when the erasure was made was one of fact,
to be decided by the jury. (*Jackson* v. *Malin,* 15 *John.* 293.
*Herrick* v. *Malin,* 22 *Wend.* 388.) And the error book shows
that the question was properly submitted to them, for it appears
not only that Mrs. McElroy, who held a counterpart of the lease,
did not deny the right of the defendant in error to receive the

rent in advance, but that Bixby, in the agreement entered into with her, admitted that the rent was so payable; and that, in his notice served upon the sheriff before the commencement of this suit, he admitted that $290,78, which was a portion of the rent claimed in advance, and for which the jury gave their verdict, was actually due.

But it is said that the agreement between Bixby and the defendant in error, in which she consented to let the property levied upon remain on the premises, free from any further claim, operated to discharge the notice served in October, and to release the sheriff from any liability for previous rent; and that, for that reason, the plaintiff below should have been nonsuited.

It will be seen by reference to the agreement that it recites that Bixby had made arrangements for staying the execution; and he was the only person who could have authorized a stay. This was not the act of the defendant in error; and even if it had been, it would have no effect upon her claim in this suit.

It is a well settled principle that a sheriff is not liable for the acts of his deputy, provided he acts out of the ordinary line of his duty, by the directions of the plaintiff in the execution. The duty of the deputy, by virtue of his appointment, is to execute process according to the command of the writ, and in pursuance of the established rules of law. That is the extent of the authority delegated to him, and if he exceeds, or deviates from, his delegated powers, by the directions of the plaintiff in the suit, he ceases to be the agent of the sheriff, and becomes the agent of the plaintiff. (*Gorham* v. *Gale,* 7 *Cowen,* 739. *Mickles* v. *Hart,* 1 *Denio,* 548.) But this rule applies only when an action is brought against the sheriff for the misfeasance or malfeasance of his deputy. The case before us proceeds upon no such ground. The sheriff here had actually collected the money, and the only question involved in the suit is as to the right of the defendant in error to recover a portion of the money so collected. The deputy was *functus officio ;* and if the proposition contended for by the plaintiff in error were sustained, the consequence would be, that because the deputy had done wrong in not collecting the money as soon as he was bound to do in the

---

Acker *v.* Ledyard.

---

faithful discharge of his official duty, the sheriff would be justified in the further wrong of refusing to pay it to the party entitled to receive it, after it had been collected.

The next ground upon which it is contended that the plaintiff below should have been nonsuited is, that the order made by the court of common pleas was a complete bar to the action.

It will be observed that this order was made upon a summary application in a suit in which the defendant in error was not a party, though it appears that she opposed the order by her counsel. It is now well settled in this state, that an order thus made upon a summary application is not conclusive, and that the principle of *res adjudicata* does not apply. (*Simson* v. *Hart,* 14 *John.* 63. *Dickenson* v. *Gilleland,* 1 *Cowen,* 481. *Dolfus* v. *Frosch,* 5 *Hill,* 493.) But even if it did, the order made in this case decided nothing. It merely gave the sheriff leave to deposit the money collected with the clerk of the court: it did not profess to adjudicate upon the rights of any person.

The objections to the judge's charge are most of them similar to those which were raised on the motion for a nonsuit, and which have already been considered. But it is contended that the judge erred in charging the jury that the admission made by Bixby in his notice served upon the sheriff that the sum of $290,78 was due to the defendant in error, furnished a good ground for the recovery of that amount.

It will be remarked that the only ground on which the plaintiff in error did, or could legally refuse to pay the claim of the defendant in error was, that Bixby had a superior claim by virtue of his execution. But if Bixby relinquished his claim, and admitted the right of the defendant in error to a part of the money collected, the sheriff, who was the agent of the plaintiff in the execution, would be bound by such admission—particularly as Mrs. McElroy did not deny the validity of the claim of Mrs. Ledyard.

The conclusion to which we have come is that the court below was right in refusing a nonsuit, and that there is no error in the judge's charge

Judgment affirmed.