## COLE *v.* HILLS.

44  227
67   17

Where a note was intended by both parties to be made payable to Benjamin Cole, but was accidentally written payable to Benjamin R. Cole, the erasure of the letter R in the name of the payee would be an immaterial alteration, and would not avoid the note, if made by the payee, after delivery.

And when a material alteration is apparent upon the face of an instrument, and is not noted as being made at or before the signing, the instrument may, nevertheless, be given in evidence to the jury, without previous evidence of the time when the alteration was made, and explanatory of such alteration.

In such case the instrument, with all the circumstances of its history, its nature, the appearance of the alteration, the possible or probable motives for the alteration or against it, and its effect upon the parties respectively, ought to be submitted to the jury; and they must determine, from all these and other circumstances, when the alteration was made, and whether fraudulently made or otherwise.

The presumption that a material alteration in an instrument was made after its execution, arises where there is an entire absence of evidence, and of circumstances, both in the instrument itself and *aliunde,* from which any inference can be legitimately drawn as to the time when the alteration was actually made; and when any such evidence or circumstances exist in a case, the presumption arises only when the jury, upon a consideration of all such evidence and circumstances, are unable to find when the alteration was made; the presumption being one of fact for the jury, and not of law for the court.

Where illegal interest has been paid in advance upon, or is included in a note by the principal, a surety who is compelled to pay the note will be entitled to the same deduction that the principal would, in the same circumstances, on account of the usury, which would be three times the amount of the illegal interest, if the usury were pleaded, or the amount of the usury, if not pleaded.

ASSUMPSIT upon a promissory note, dated January 31, 1855, for $204.88, payable to the plaintiff, or order, in six months; and made by Thomas Tolman as principal, and the defendant as surety, by putting his name on the back thereof.

At the trial the plaintiff produced a note of the character described, but which was originally written payable to Benjamin R. Cole, or order, and altered by erasing with the pen the initial letter R, in the payee's name; and the note was allowed to be read, against the defendant's exception, without any explanation of such alteration other than what might be gathered from the appearance of the note itself.

The plaintiff testified that about the time the note became due he presented it to Tolman, who said if the plaintiff did not get it of him, he would of Hills; and that on several occasions he called on the defendant to pay it, who said he would pay it if Tolman did not. On the contrary, the defendant testified that the plaintiff called upon him two or three times, and that he always told him he could not pay; but at one time told him he would aid him, if he could, in getting it of Tolman. But it was not stated that the note was presented to Hills, or that there was ever any conversation about the alteration between the parties to the note.

The evidence tended to prove that this note was given to take up a previous note, held by the plaintiff against the same parties, and was designed to be made payable to the plaintiff, and that it was written by Tolman in the plaintiff's presence, who saw him write it; and Tolman testified that the note had been altered, but by

whom he did not know. The defendant also testified that he knew nothing of the alteration. Tolman further testified that he did not know whether the plaintiff's name was Benjamin or Benjamin R. Cole.

The court instructed the jury that if the note was apparently altered, the law would presume it to have been done subsequently to its execution, and wrongfully, unless there was evidence, from the appearance of the note or alteration, that it was altered before; and that they would determine, from all the circumstances in the case, including the appearance of the note, whether it was altered afterward or not. If it was, they would find for the defendant. To these instructions no exceptions were taken.

It appeared that the note in suit included interest upon the one for which it was given, at the rate of eight per cent from October 10, 1854, and also that Tolman paid the plaintiff eight per cent interest in advance on this note for six months; and there was no evidence that either of these facts were made known to Hills before he signed; it appearing that Hills was not present when the arrangement between the plaintiff and Tolman was made, or when the note was written; but that after it was written Tolman carried it to Hills, and procured his signature in the absence of the plaintiff.

The defendant's counsel asked the court to charge the jury that for these reasons the plaintiff could not recover; but the court declined to do so, and instructed them that the mere fact of omitting to give this information to the defendant, no inquiry having been made by him, would furnish no defense except to the extent of the extra interest included in the note, and paid in advance; and to these instructions the defendant excepted.

Tolman testified to an agreement between him and the plaintiff shortly before the note matured, for an extension of four months, for eight per cent interest, which he paid in advance, and this without the knowledge or assent of Hills; and among other grounds of defense this was submitted to the jury.

A verdict having been returned for the plaintiff, the defendant moved to set it aside, upon the exceptions before stated, and also because, as alleged, the finding of the jury, that the alteration of the note was before the execution, was against the weight of the evidence, the substance of which is reported on that point; and the questions of law arising on this case were reserved for the whole court.

*Morrison, Stanley & Clark*, for the defendant.

There was no question on the trial before the jury but that the note which constituted the plaintiff's sole cause of action in this case, had at some time been altered. The fact was not denied by the plaintiff's counsel that the alteration was apparent upon the face of the note, and the case so finds. Upon this state of facts we maintain that the court should not have permitted the note to be read to the jury until the plaintiff had offered some evidence tending to show that the alteration was made prior to the execution and delivery of the note. If it had been doubtful whether any alter-

ation had been made, then the case would have been different, because the fact as to whether there has been any alteration is a question for the jury. But this question did not arise in this case, and therefore the note could not be submitted to the jury to determine that fact. Neither could it be submitted to them to determine whether the alteration was material, because that question was for the court. *Burnham* v. *Ayer*, 35 N. H. 354, and cases cited.

The question therefore raised upon this point in the case is whether a note which has been materially altered is competent evidence to be submitted to a jury, without explanation as to when the alteration was made. Whatever rule may obtain in other jurisdictions it must now be regarded as settled in this State, that the law presumes the alteration to have been made subsequent to the execution of the instrument, and to have been fraudulently made. *Hill* v. *Barnes*, 11 N. H. 395; *Humphreys* v. *Guillow*, 13 N. H. 385; *Burnham* v. *Ayer*, 35 N. H. 354. Therefore the inquiry is, whether a note which has been fraudulently altered is competent evidence to be submitted to a jury, without explanation; because upon the facts existing in this case the rule of law attaches, and regards the note as fraudulent in law, until the alteration is explained.

It is perhaps unnecessary to cite authorities upon this point, because the cases already referred to in our own courts, and numerous decisions in other States, lay down the rule that it is incumbent upon the party producing the paper, and claiming under it, to explain any alteration apparent upon it. He must offer some evidence tending to show when and under what circumstances the alteration was made, and it is for the court to determine whether the alteration is so far accounted for as to permit the paper to be read in evidence. But it is said that the note itself furnishes evidence, and that the jury may determine the time and character of the alteration from inspection alone.

To this position we do not assent. It has been decided otherwise in England, and we submit it is inconsistent with the law laid down by the courts in this State, in regard to the presumption which attaches in cases of alteration; and we think it will be found upon examination that in those courts where it is held that the jury may judge of the time when the alteration was made, from inspection alone, it has also been held, either that it was to be presumed that the alteration was made when the note was executed, or that there was no presumption about it—one way or the other. *Henman* v. *Dickinson*, 5 Bing. 183; *Cariss* v. *Tattershall*, 2 M. & Gr. 890; *Clifford* v. *Parker*, 2 M. & Gr. 909; *Knight* v. *Clements*, 8 Ad. & El. 215. In this last case it was held at *nisi prius* that the jury might decide from inspection, but the full court of king's bench adjudged otherwise, and ordered a nonsuit. In *Chesley* v. *Frost*, 1 N. H. 148, *Woodbury*, J., said: " Such, then, being the character of the alteration, the authorities and principles are uniform that render the deed wholly void, and inadmissible in evidence." See also *Clark* v. *Eckstein*, 22 Penn. 507, cited 15 U. S. Dig. 33.

But if the jury are allowed to judge, from inspection alone, as to the time of the alteration, what becomes of the presumption which

it is said the law makes in such cases? It is entirely done away with; and to hold that no other evidence is necessary to entitle the note to be read to the jury, is to hold that there is no presumption either way; is saying to the jury it is for them to determine the fact from the appearance of the instrument, which can be but mere conjecture, after all. If the ink is all the same color, that proves nothing, because if a party intended to make fraudulent alteration he would be careful to use the same ink, or to procure some of the same color; and if it is not all of the same color, that fact is quite as strong evidence that the alteration is not fraudulent, as a party making fraudulent alteration would have guarded against any appearances of that kind; and the same appearance may be produced in an instrument written all at the same time, by the ink being exhausted in the pen, and then replenished; so of the handwriting. But in this case nothing was written. The alteration consisted in erasing what had been written.

We are aware that the court say, in *Hill* v. *Barnes,* that in some instances the jury may be satisfied, from the inspection of the paper itself, that the alteration was made before the signature was affixed to the note, and the only case cited as authority is *Gooch* v. *Bryant,* 1 Shep. 390. But the court will perceive, upon an examination of that case, that it is there held that the presumption is, in the absence of all evidence, that the alteration was prior to the delivery of the note; an entirely different doctrine from what is held in this State; and we submit that that case furnishes no authority for the position assumed by the learned chief justice in *Hill* v. *Barnes.* In *Wilde* v. *Armsly,* 6 Cush. 314, this question is examined at some length; and *Metcalf,* J., says, in delivering the opinion of the court (page 319), "We are not prepared to decide that a material alteration, manifest on the face of the instrument, is, in all cases whatsoever, such a suspicious circumstance as throws the burden of proof on the party claiming under the instrument. The effect of such a rule would be, that if no evidence is given by the party claiming under such an instrument, the issue must always be found against him; this being the meaning of the 'burden of proof.'" 1 Curtis 640. Now that is the rule adopted in this State, and we think the rule must be abandoned, or else it must follow that the mere production of the note is not competent evidence upon which the jury may find against the presumption which the law raises.

We maintain, further, that if the note was properly submitted to the jury, the verdict was against evidence. *Wendell* v. *Safford,* 12 N. H. 171; *Davis* v. *Jeney,* 1 Met. 222; *Bryant* v. *Commonwealth Insurance Co.,* 13 Pick. 543.

It appears that the note in suit included interest upon one for which it was given, at the rate of eight. per cent, and this fact was unknown to the defendant, who was a surety. The consideration of the note was therefore in part illegal, and was not valid as against the defendant. *Preston* v. *Jackson,* 2 Stark. 237; *Wales* v. *Webb,* 5 Conn. 154. It was fraudulent in law as against the defendant. *Watriss* v. *Pierce,* 32 N. H. 560, and cases cited; *Whicher* v. *Hall,* 5 B. & Cr. 269; *Pidcock* v. *Bishop,* 3 B. & Cr.

605; *Evans* v. *Whyle,* 5 Bing. 485; *Archer* v. *Hale,* 4 Bing. 464; *Glynn* v. *Hertel,* 8 Taunt. 207.     The principle established by these cases we contend is applicable to this; the only difference being in the amount involved, which is entirely immaterial.

The case also shows that by an agreement between Tolman, the maker of the note, and Cole, the plaintiff, Tolman was to pay, and did actually pay, interest at the rate of eight per cent in advance, for the first six months, and agreed to pay that rate of interest until the note was paid.     This arrangement, which was not made known to the defendant, was fraudulent as to him, and discharged him as surety.

*E. A. Hibbard,* for the plaintiff.

The alteration was immaterial, and it did not affect the note. *Pequawket Bridge* v. *Mathes,* 8 N. H. 139; *Granite Railway* v. *Bacon,* 15 Pick. 239; *Brown* v. *Pinkham,* 18 Pick. 172; *Burnham* v. *Ayer,* 35 N. H. 354; *Arnold* v. *Jones,* 2 R. I. 345, cited 14 U. S. Dig.; Alteration of Instruments 1.     The alteration in no way changed the responsibility of any person concerned.     Neither the defendant nor Tolman was made liable to pay any larger sum, any sooner, or at any different place; nor was the plaintiff benefited, for he could recover as well before as after the alteration.     The most that was done was to correct a mistake, and make the note correspond with the intention of the parties.     The consent of the promissors may be implied in such a case.     *Hunt* v. *Adams,* 6 Mass. 522; *Bowers* v. *Jewell,* 2 N. H. 545; 1 Greenl. Ev., sec. 567.     The law would make a correction in this case quite as readily as to strike out south-easterly and insert south-westerly in a deed, as in *Burnham* v. *Ayer.*     There is not even a pretence that this alteration, whenever made, was made with any fraudulent intent, and it would do great injustice to hold that such an alteration would avoid the note.     In another view the alteration was immaterial, because the middle letter constitutes no part of a name.     *King* v. *Hutchins,* 28 N. H. 578.     If the alteration was immaterial no injustice has been done to the defendant, though some of the rulings of the court may have been erroneous.

But suppose the alteration to be material.     The presumption (as it is called) that an alteration was made after the execution and delivery of a paper, attaches only, in the absence of all evidence to the contrary, either "from the inspection of the paper itself," or " circumstances from which an inference can be legitimately drawn as to the time when it was actually made."     *Hills* v. *Barnes,* 11 N. H. 397; *Burnham* v. *Ayer,* 35 N. H. 354.     The defendant's position really is, that it was the duty of the court to rule, as a matter of law, that the note did not furnish any competent evidence on the subject of the alteration, but whenever the alteration was explained *aliunde* the note would be admissible to prove the promise.     In other words, the appearance of the note could not be evidence, in any stage of the case, which the jury might consider as tending, with other circumstances, to show when the alteration was made. Because, if the jury were authorized to consider the appearance of enote as competent evidence at all, it could not be material

whether the note was admitted before or after the other circumstances, nor in fact whether there were any other circumstances proved.   The weight of authority is decidedly in favor of the plaintiff on this point, although the cases are not quite all one way. See 1 Greenl. Ev., sec. 564, and notes.   See particularly *Hills* v. *Barnes*, 11 N. H. 395; *Davis* v. *Jenney*, 1 Met. 221; *Ely* v. *Ely*, 6 Gray 439; *Beaman* v. *Russell*, 20 Vt. 205, cited in 9 U. S. Dig.; Alteration of Instruments 1.   The remark of *Woodbury*, J., in *Chesley* v. *Frost*, stands on peculiar grounds, as explained in the same case, and can have no application where the alteration was in a note instead of a deed.

With all deference to the reported cases it may safely be asserted that there is no presumption that an alteration of a written instrument was made after it was executed—much less that it was "fraudulently made."   It would be difficult to tell where this presumption is to come from, irrespective of the appearance of the paper.   But it is doubtless incumbent on the party offering the instrument in evidence to satisfy the jury in some way that the alteration was honestly and properly made; and in the absence of any evidence either way, from the appearance of the paper or otherwise, he fails in a point essential to the maintenance of his action. And this is all that is intended in the books when it is said that an alteration, in the absence of evidence, will be "presumed" to have been made after the paper was executed.   See *Ely* v. *Ely*, 6 Gray 441.   It is not true that there is a presumption (or *primâ facie* case) to overcome, any more than if the question arose whether there had been a delivery of a paper or of personal property.   In such a case, if there was no evidence from which the jury might infer a delivery, it would be regarded (or presumed) that there was none; but no one will contend that in order to sustain the action the party must rebut the presumption in the first place, and then have sufficient evidence left to warrant the jury in finding the fact proved. Slight evidence therefore is sufficient to account for the alteration in this case.

So far as this contract was illegal, it has been rectified by the court.

SARGENT, J.   An immaterial alteration, which does not vary the meaning of an instrument, does not avoid it, though made by the party claiming under it.   *Burnham* v. *Ayer*, 35 N. H. 354, and cases cited.   Alterations in deeds are immaterial where neither the rights nor interests, duties nor obligations, of either of the parties are in any manner affected or changed.   *Smith* v. *Crocker*, 5 Mass. 538. An alteration or insertion is immaterial, if it is the insertion only of what the law would imply, or the correcting of a mistake, as in such case the assent of the maker or obligor will be presumed. *Bowers* v. *Jewell*, 2 N. H. 543; *Burnham* v. *Ayer*, *supra*, and authorities.

In the case before us the alteration was only the correction of a mistake, the erasing a middle letter in the name of the payee, which did not belong there; and the case finds that the promissor did not know whether it belonged there or not, though he wrote the original note, and intended to make it payable to this plaintiff.   Nor

were the rights or obligations of any party affected by the altera-
tion. We think this must be held to be an immaterial alteration,
to which the assent of the defendant would be presumed, even
though made by the payee after the delivery of the note to him.
The note was therefore properly admitted in evidence, without any
explanation of the alteration, or any proof as to when it was made;
and the exception that the verdict was against the weight of evi-
dence on the other issue, becomes immaterial.

We see, therefore, that the second ruling was only too favorable
to the defendant. The court ruled that the alteration was a material
one, and, therefore, if it had been made by the payee since its de-
livery, it would avoid the note. The defendant can not object that
the court ruled too strongly in his favor. But supposing that the
alteration had been a material one, as it was held to be by the
court, still the ruling would have been perfectly proper, allowing
the note to go to the jury in the first instance as evidence. For
although in this State we hold the presumption to be that an altera-
tion, if unexplained by evidence, or by circumstances, or the appear-
ance of the paper itself, was made after the execution and delivery
of the instrument, yet the whole question is for the jury; not only the
fact as to whether there has been any alteration at all, where there
is doubt upon that point, but also the time when the alteration was
made; whether before, at the time of, or subsequent to its execu-
tion and delivery; by whom it was made, and in certain cases whether
fraudulently made or otherwise. The presumption is only one of
fact, to be made by the jury, and not one of law, to be applied by
the court. *Bowers* v. *Jewell*, 2 N. H. 543.

In Maine and in many other States it is held that the presump-
tion will be, in the absence of all proof or circumstances tending
to show how the facts were, that the alteration was made before the
execution of the instrument. *Gooch* v. *Bryant*, 1 Shep. 390. And
in Vermont it is held in the like case that the presumption should
be that the alteration was made at the time of the execution, and it
is said that this is according to the rule of the common law. *Bea-
man* v. *Russell*, 20 Vt. 205. But it is held in both these cases that
the whole question is one for the jury upon all the facts, to settle
where the alteration was made.

In New-York the courts hold the doctrine nearly the same as in
this State. In *Jackson* v. *Osborn*, 2 Wend. 559, it is said that where
nothing appears but the fact of an erasure or interlineation in a
material part of the deed, of which no notice is taken at the time
of the execution, it is a suspicious circumstance, which requires
some explanation by the party producing it; and it is the province
of the jury to say whether the explanation is satisfactory. To the
same effect is *Jackson* v. *Jacoby*, 9 Cow. 125, and *Herrick* v. *Malin*,
22 Wend. 388. But in *Smith* v. *McGowan*, 3 Barb. S. C. 404, it is
held, that although an alteration appearing on the face of the deed
is a suspicious circumstance, requiring explanation, yet it is not
enough to exclude the instrument when offered as evidence, and
though ink of different colors was used in the same deed, and
though there was an erasure of one name and the substitution of

another as grantee, yet that these circumstances would not be enough to authorize the court as matter of law to exclude the instrument as evidence.

It is held in Massachusetts (*Ely* v. *Ely*, 6 Gray 439) that there is no legal presumption either way as to the time when the alteration was made, but that the burden of proof was on the plaintiff to show that it was made before the execution and delivery of the instrument. The alteration may be of such a character that he may safely rely upon the paper itself and the subject matter, as authorizing the inference that the alteration was made before the execution, or he may introduce some very slight evidence to account for the apparent alteration. See, also, the well considered opinion of *Metcalf*, J., in *Wilde* v. *Armsby*, 6 Cush. 314.

An alteration in a deed may be of such a kind and made in such a way as to explain itself, and remove all doubts from the minds of the jury, without any other evidence. Some alterations may be greatly to the disadvantage of the holder or party setting up the instrument. Shall there be the same presumption that he made the alteration in that case, as in a case where the alteration was greatly to his advantage? That would hardly be claimed. So when the instrument may have been in the possession of some third person ever since its execution, and when the party now claiming under it has had no opportunity to erase or alter it.

It seems to us, then, that the proper rule is, that the instrument, with all the circumstances of its nature, its history, the appearance of the alteration, the possible or probable motives to the alteration, or against it, on the part of all persons connected with it, or in whose possession it may have been, and the effect of the alteration upon the rights and obligations of the parties, respectively, ought to be submitted to the jury, who should find from all these whether the alteration was made before or after its execution, and if after, whether it was with the assent of the adverse party, and consequently whether it rendered the instrument invalid or not. Whether the hand-writing of the alteration is the same with the body of the instrument, whether it is the same with that of the signature, whether the ink is the same or different, whether, from the appearance, the body of the instrument and the alteration were written at the same time or at different times, whether the party claiming or the party sought to be charged is to be benefited by it, whether the alteration was made before or after its execution, and if after, by whom, and for what purpose, are all questions of fact for the consideration of a jury. It could serve no good practical purpose for the court to go into these inquiries first, to determine whether a party has made a *primâ facie* case.

Upon the usual proof of the execution of the instrument, it should, without reference to the character of any alteration upon it, be admitted in evidence, leaving all testimony in relation to such alteration to be given to the jury, with proper instructions upon the facts in each case. *Beaman* v. *Russell*, 20 Vt. 205; *Bailey* v. *Taylor*, 11 Conn. 531. In ninety-nine cases in every hundred the jury would be able to settle the questions readily upon a preponderance

of the evidence, where they should consider the paper in connection with all the circumstances above stated.    But if they should not be able to do so, and could not find any preponderance of the evidence as to when the alteration was made, or if there is an entire absence of evidence and of circumstances, both in the instrument and in the evidence *aliunde,* from which an inference can be legitimately drawn as to the time when it was actually made, then the presumption arises that the alteration was made after the execution of the instrument; and this is a presumption of fact which the jury are to make, under proper instructions from the court, where they shall be unable to find the fact from any evidence or circumstances in the case. That is clearly the doctrine of our decisions.    *Hills* v. *Barnes,* 11 N. H. 395; *Burnham* v. *Ayer,* 35 N. H., *supra.*

The result of the application of the rule as held in New-York, in Massachusetts, and in this State, will thus be seen to be the same; and whether it be said that the presumption is against the plaintiff, or that the burden of proof is upon him, it amounts to the same thing, since in both cases the instrument is to be used as evidence, and may afford sufficient evidence in itself to rebut and overcome the presumption in one case, or to make a *primâ facie* case for the plaintiff in the other.

The jury found that there was no contract with the principal to extend the time of payment of the note without the consent of the surety, and the usurious contract is void by our law only to the extent of the usury.    *Willie* v. *Green,* 2 N. H. 333.

As surety, the defendant might have pleaded the usury and had three times the amount of the usury deducted; but as he did not, he stands as the principal would under similar circumstances, which would be to have the usury deducted, or in case he has paid it to recover it back.    The defendant in this case has had the full benefit of this deduction, and he has no farther cause of complaint.    *Richmond* v. *Standclift,* 14 Vt. 258; *Mead* v. *Merrill,* 30 N. H. 472.

There must be

*Judgment on the verdict.*