---

(64 Misc. Rep. 224.)

## In re DARROW'S ESTATE.

(Surrogate's Court, Cattaraugus County. July, 1909.)

1. EVIDENCE (§ 77*).—FAILURE TO PRODUCE WITNESS.—PRESUMPTION.
   No presumption can be indulged in favor of one party as against the other for failure to produce a witness equally available to both. .
   [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 97; Dec. Dig. § 77.*]

2. ALTERATION OF INSTRUMENTS (§ 8*)—DUTY TO EXPLAIN.
   A certificate of corporate stock given by its owner to his wife was discovered after his death in the possession of a bank, which claimed to hold it as collateral for an indebtedness of the husband. The assignment had been changed by erasing the name of the wife as assignee, and the original date, and writing in pencil, in place thereof, the name of the bank and the date. No evidence was offered showing by whose authority the alterations had been made or the circumstances under which the bank obtained possession. Held, that the principle that one seeking to maintain title through an instrument presenting evidence of material alteration assumes the burden of satisfactorily accounting therefor was not applicable,

---

as no written assignment was necessary to enable the bank to hold the certificate as collateral.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 40–46; Dec. Dig. § 8.*]

3. EVIDENCE (§ 53*)—PRESUMPTION OF LEGALITY.
   Where a situation is explainable on the basis of legality, it will be assumed that such is the explanation, and he who claims illegality must prove it.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 73; Dec. Dig. § 53.*]

4. EVIDENCE (§ 67*)—PRESUMPTIONS—CONTINUANCE OF FACT.
   Proof of the existence at a particular time of a fact of a continuous nature gives rise to the inference, within logical limits, that it existed at a subsequent time.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 87, 88; Dec. Dig. § 67.*]

5. EXECUTORS AND ADMINISTRATORS (§ 221*)—TRANSFER OF STOCK—PRESUMPTIONS.
   A certificate of stock given by its owner to his wife was discovered after his death with a bank, which claimed it as collateral for a debt of the husband. The assignment had been changed by erasing the wife's name as assignee and writing in pencil, in place thereof, the bank's name and date. No evidence was offered showing by whose authority the alterations were made. The stock was subsequently sold by the bank, and the proceeds applied to the husband's debt. *Held* that, the wife having acquired title to the certificate, the presumption was that such title continued until other facts appeared overcoming it, and the reasonable inference was that the wife, to render financial assistance to her husband, permitted a deposit of the certificate as collateral, and that she was entitled to be reimbursed from her husband's estate.

   [Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 221.*]

Proceedings on judicial settlement of the accounts of the executors of Adelbert E. Darrow, deceased. Account settled.

Charles E. Congdon, for executors.
G. W. Cole, special guardian, for Trudie Darrow Wilson.
W. S. Thrasher, for creditor.

DAVIE, S. The only controversy upon this accounting relates to the claim of Mrs. Darrow. Decedent died February 15, 1908, leaving a will bearing date August 1, 1907, which was admitted to probate February 24, 1908. By the provisions of such will decedent gave to his widow, absolutely, his dwelling house in the village of Little Valley and all his household furniture. He bequeathed to his executors $2,-000, par value, of the capital stock of the Cattaraugus Cutlery Company, in trust, directing his executors to retain title thereto and the charge and control thereof until, in the exercise of their good judgment, it should seem for the best interests of the beneficiary to sell the same, and when sold to invest the proceeds thereof upon unincumbered real estate, to apply the earnings of such stock until sold and the interest derived from the investment of the proceeds after the sale thereof, or such portion thereof as might be necessary, to the support and education of Donald D. Wilson, infant grandson of decedent, and, when he became 21 years of age, to transfer such stock, if not then sold, or

the proceeds of the sale thereof, with any unexpended portions of the accumulations, to the grandson, to be owned by him thereafter absolutely. One-half of the residue of his estate, real and personal, he gave to his widow, absolutely. The use of and income from the other one-half he gave to his daughter during life, with the reversion to the grandson, providing, however, that, if the income of such one-half should be insufficient to properly support and maintain the daughter, such portion of the principal as might be necessary should be used for that purpose. Decedent was a widower at the time of his marriage with the claimant, September 12, 1906. He had only one child, the legatee, Trudie Darrow Wilson.

Decedent and the claimant were married at the residence of her parents, at Chaumont, Jefferson county, N. Y. On the day of and immediately preceding the marriage ceremony, decedent called for pen and ink and a place to write, and, upon being provided with the same, took from his pocket a certificate for 14 shares of the capital stock of the Cattaraugus Cutlery Company, of the market value of $3,500, inquired of the claimant how she intended to write her name after their marriage, and, after being informed, wrote her name "Dell Govro Darrow" in the printed blank assignment on the back of the certificate, dated and signed the assignment, and thereupon delivered the certificate to the claimant, saying: "This is your wedding present. It is 14 shares of stock." Claimant took the certificate, went to her room, and placed the same in her valise. Later in the day, after the marriage, claimant stated to her father and mother, in the presence of the decedent, that he had given her 14 shares of stock in the Cattaraugus Cutlery Company for a wedding present, to which decedent replied: "It is valued at $3,500." The evidence discloses nothing further concerning the history of this certificate, or its ownership or possession, until after the death of the decedent, when it is discovered in the possession of the Cattaraugus County Bank; such bank claiming to hold the same as collateral security for the payment of decedent's indebtedness at the bank. The assignment had been changed, by erasing the name of the claimant as assignee, and the original date, and writing in pencil, in place thereof, the name of the bank and the date April 2, 1907. Such stock was subsequently disposed of by the bank by virtue of its alleged lien thereon, and the avails thereof applied on the indebtedness of the decedent.

This is substantially all the evidence offered at the trial, and three distinct propositions are established thereby: First, that claimant acquired title to the stock represented by the certificate in question from her husband by gift inter vivos September 12, 1906; second, later the bank obtained possession of the certificate, claiming to hold it as collateral security for the payment of decedent's indebtedness; and, third, the assignment on the back of the certificates had been altered in the particulars above specified. No evidence is offered showing by whose authority or direction the erasures and interlineations in the assignment were made, or the circumstances under which the bank obtained possession. Consequently, the question of title to this certificate at the time of decedent's death must be determined from the inference fairly deducible from the established facts and the presump-

tions properly applicable thereto. The change in the assignment having been made by the bank's cashier, it is apparent that he possesses some information in regard to the manner in which the bank obtained its possession; but he is not produced as a witness by either party. No unfavorable presumption, however, can be indulged in favor of one party as against the other on account of the failure to produce this witness; he being equally available to both parties. People v. Sweeney, 41 Hun, 332; Horowitz v. Hamburg Am. Packet Co., 18 Misc. Rep. 24, 41 N. Y. Supp. 54; Shannon v. Castner, 21 Pa. Super. Ct. 294.

The claimant relies upon the principle that one seeking to maintain title through the instrumentality of a written instrument, presenting upon its face evidences of material alterations, assumes the burden of satisfactorily accounting for such alterations. Greenl. Ev. 564; Herrick v. Malin, 22 Wend. 388; Acker v. Ledyard, 8 Barb. 514; Booth v. Powers, 56 N. Y. 22. This principle, however, is hardly applicable to this case, because no written assignment was necessary to enable the bank to accept and hold this certificate as collateral security. The mere delivery of the same for the purposes mentioned would have been entirely effectual. Gilkinson v. Third Ave. Railroad Co., 47 App. Div. 472, 63 N. Y. Supp. 792; Walsh v. Sexton, 55 Barb. 251; Westerloo v. De Witt, 36 N. Y. 340, 345, 93 Am. Dec. 517; Allerton v. Lang, 10 Bosw. 362; Hackney v. Vrooman, 62 Barb. 650, 670; Bradley v. Hunt, 5 Gill & J. (Md.) 54, 23 Am. Dec. 604. The only title the bank asserted to the certificate was by way of lien thereon to secure the indebtedness of the decedent. It made no pretense of having acquired the absolute title, or any other interest than the one stated.

But, assuming that the bank's title rested entirely upon the written assignment, if the alterations were made by Ballard, the cashier, by direction of the claimant, the transaction was entirely legitimate. If made without her knowledge or acquiescence, the act of the cashier was illegal and possessed the elements of criminality. The certificate was either delivered to the bank and the assignment altered with claimant's knowledge, or both larceny and forgery were perpetrated in depriving her of it. The evidence failing to show what the fact is, resort must be had to presumption. 16 Cyc. 1082. In People v. Minck, 21 N. Y. 541, Comstock, C. J., in considering this subject says:

"In this case it seems that the number two hundred and sixty-six had been first written upon the statement as the plaintiff's vote; that this number was erased and two hundred and seventy-three written over it, as the return appeared when introduced in evidence. We think the plaintiff was not called upon to explain the erasure or alteration. We are to assume, because the contrary is not shown or suggested, that on an inspection of the writing at the trial the larger number was plainly written over the smaller, so as to leave no doubt as to the actual reading of the document, and that the alteration appeared to be made with the same hand as the residue of the statement, with the same ink, at the same time. The law does not presume wrong where none is proved."

Where a situation is explainable on the basis of legality, it will be assumed that such is the explanation. 16 Cyc. 1083; Green v. Benham, 57 App. Div. 9, 68 N. Y. Supp. 248. Consequently the result follows in judicial determinations that he who claims the existence of illegality must prove it. 16 Cyc. 1082, and cases there cited.

It would not be a violent or unreasonable inference to suppose that the claimant, for the purpose of rendering financial assistance to her husband, permitted the deposit of this stock as collateral security for the payment of his debts at the bank. It would seem more consistent with the principles enunciated in the authorities cited to adopt that inference than the one of illegal or criminal procedure on the part of the decedent or the officers of the bank. Such a conclusion, however, does not deprive the claimant of her right to recover; for there is another equally well-defined presumption to which reference in this connection should be made:

"Proof of the existence at a particular time of a fact of a continuous nature gives rise to the inference, within logical limits, that it exists at a subsequent time."

Applied to this case, the presumption is that, the claimant having acquired absolute title to the certificate in question on September 12, 1906, such title continued until other facts appear overcoming the presumption. "Such inferences of continuance, however, are merely inferences of fact, and may, therefore, under the general rule, be rebutted." 16 Cyc. 1052. This presumption of continuing title on the part of the claimant is to some extent overcome by the other proof in in the case, viz., possession on the part of the bank claiming a lien thereon for payment of decedent's debts. But it will be observed that the bank has never claimed to be the absolute owner of this certificate, nor any interest in it, except the right to hold it as collateral security for the purposes mentioned. This still left the legal title in the claimant, subject to the lien of the bank. In view of this state of facts, a conclusion may. be arrived at entirely in harmony with all the various presumptions to which reference has been made, without imputing criminality or misconduct to any one. The reasonable inference is. that the claimant, being the owner of this stock, consented to its use as collateral security for decedent's debts at the bank. The bank ultimately finds it necessary to enforce its lien, and does so, and thereby claimant is deprived of her property, and decedent's estate has the benefit of it. If such is the case, claimant is entitled to be reimbursed from the funds of the estate.

It appears from the evidence of the witness Korn that shortly before the decedent's death, witness had a conversation with him regarding the coming January election of directors of the Cattaraugus Cutlery Company, in which Korn said to decedent, "Why, Dell, you have considerable stock," to which decedent replied that he did not then have as much as formerly, as he had given some of the stock to his daughter, Trudie, and some to his wife. Here was an express recognition on the part of the decedent of his wife's title to the stock, without any intimation or suggestion that she had ever transferred the same to him. In view of all these facts, the conclusion seems well founded that the claimant is entitled to recover the value of this stock in question from the estate. Upon the trial the following stipulations were made:

"It is stipulated that the market value of the stock in controversy is $3,500,. and that it was at the time of the alleged conversion of the stock; that, on or about April 21, 1908, the Cattaraugus County Bank assumed to sell this stock

in question; and that they applied the proceeds thereof to the payment of the indebtedness of the deceased, which indebtedness was held and owned by the bank."

A decree will be entered herein establishing the claim of the claimant at the sum of $3,500 and directing the payment thereof out of the estate. The balance of the claim, to wit, that part thereof based upon the check of the decedent set forth in the claim filed, is disallowed, the same not having been satisfactorily established.

Decreed accordingly.